RENSSELAER & S. R. CO. v. IRWIN, Internal Revenue Collector.

(District Court, N. D. New York.   March 5, 1917.)

1. INTERNAL REVENUE ⬡⟿9—INCOME TAXES—"INCOME."

Income Tax Act Oct. 3, 1913, c. 16, § 2, G (a), 38 Stat. 172 (Comp. St. 1913, § 6327), provides that the normal tax hereinbefore imposed upon individuals likewise shall be levied, assessed, and paid annually upon the entire net income arising or accruing from all sources during the preceding calendar year to every corporation. Long prior to the enactment of the Income Tax Act, plaintiff railroad company leased its line to a second company, which agreed to pay the interest upon and discharge the bonds issued by plaintiff, to maintain the right of way and buildings, and to pay direct to each stockholder dividends at the rate of 8. per cent. per annum on each share of stock. Plaintiff received the sum of $1,000 per annum from the lessee company to enable it to maintain its corporate existence. *Held* that, as directors and officers of plaintiff corporation possessed its property for the benefit of the stockholders, and it, as a corporation, was the legal owner thereof, and as all rents received in the first instance from corporate property belonged to the corporation, shareholders not having legal title to any of the corporate property, the dividends paid direct to the stockholders as rent must be treated as corporate income, income being defined as the gain and receipts from property, labor, or business, and hence income taxes must be paid by the corporation thereupon, notwithstanding the corporation was not actively engaged in business, and the conveyance was not fraudulent in fact.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28.

For other definitions, see Words and Phrases, First and Second Series, Income.]

2. INTERNAL REVENUE ⬡⟿9—INCOME TAXES—SCOPE OF ACT.

In such case, the corporation could not defeat liability on the ground that it had no income out of which to pay the taxes imposed, for it could borrow, and it could not, by providing for the payment of its income direct to its stockholders, in that way evade the provisions of the act.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28.]

3. CORPORATIONS ⬡⟿174, 182—SHAREHOLDERS—RIGHTS OF.

A stockholder is not an agent of the corporation in which he holds a share, and he has no legal title to any of its property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 649–652, 686–690.]

4. PLEADING ⬡⟿8(2)—COMPLAINT—CONCLUSION OF LAW.

Where, in an action to recover income taxes paid under protest, the facts were stated showing the financial condition of plaintiff corporation

---

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and the disposition of rents received under a lease of its property, the allegation that the corporation had no income was a mere conclusion of law.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 13.]

5. PLEADING ⊙⟹214(5)—DEMURRER—EFFECT OF.
While a demurrer admits all facts well pleaded, it does not admit conclusions.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 527.]

6. INTERNAL REVENUE ⊙⟹9—INCOME TAXES—RIGHT TO.
Where a corporation, before the enactment of the Income Tax Act leased its property, the lease providing for payment of rents direct to the stockholders, taxes based on such income cannot be defeated on the theory of a novation; the corporation, notwithstanding payment to its shareholders, receiving the income.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28.]

At Law. Complaint by the Rensselaer & Saratoga Railroad Company against Roscoe Irwin, United States Collector of Internal Revenue, Fourteenth District, State of New York. On demurrer to the complaint, on the ground that it did not allege facts sufficient to constitute a cause of action. Demurrer sustained.

G. B. Wellington, of Troy, N. Y., for plaintiff.
D. B. Lucey, U. S. Atty., of Ogdensburg, N. Y., for defendant.

RAY, District Judge. The plaintiff is a railroad corporation, which owned and operated a railroad in the state of New York, and which leased and operated other railroad lines all in the Fourteenth internal revenue district. The defendant is the collector of United States internal revenue for said district. The capital stock of the plaintiff is $10,000,000, of which $9,200,000 is outstanding in the hands of the owners thereof. Its bonded and other indebtedness is $2,000,000.

[1] In 1913 the plaintiff was notified it was to make a return of annual net income for 1913, under the Act of Congress of October 3, 1913, c. 16, § 2, G (a), known as the Income Tax Act, which provides:

"The normal tax hereinbefore imposed upon individuals likewise shall be levied, assessed, and paid annually upon the entire net income arising or accruing from all sources during the preceding calendar year to every corporation, joint stock company or association, and every insurance company, organized in the United States, no matter how created or organized, not including partnerships. * * *"

It made a return which showed:

"That its capital amounted to $10,000,000, and that there was outstanding in the hands of the public $9,200,000; that its total amount of bonded and other indebtedness was $2,000,000; that its gross income for the year was $0."

With respect to the last item an explanatory memorandum was attached to said return, which was as follows:

"Explanatory Memorandum.

"The Rensselaer & Saratoga Railroad Company, during the calendar year ending December 31, 1913, derived no revenue from the operation and management of its business and properties. During said year it was not in business.

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This has been determined by the court in the action in the District Court of the United States, Northern District of New York, entitled 'Rensselaer & Saratoga Railroad Company v. Cyrus Durey, Collector.' By an instrument in writing dated May 1, 1871, the Rensselaer & Saratoga Railroad Company leased all its properties and franchises (excepting its cash on hand, which did not exceed $75,000) to the Delaware & Hudson Company. The lease is perpetual. The Delaware & Hudson Company has continuously since that time operated the railroad formerly operated by the Rensselaer & Saratoga Railroad Company. Under said lease the Delaware & Hudson Company agreed to pay to the Rensselaer & Saratoga Company $1,000 a year to enable it to keep up its corporate existence. This is the only payment that the Delaware & Hudson Company makes into the treasury of the Rensselaer & Saratoga Railroad Company. The Delaware & Hudson Company also pays direct to stockholders $8 a year on each and every share of the capital stock of the Rensselaer & Saratoga Railroad Company outstanding, amounting to 92,000 shares owned outright by stockholders and 8,000 shares held in the treasury of the Delaware & Hudson Company. The Delaware & Hudson Company also pays 7 per cent. per annum direct to bondholders holding the bonds issued by Rensselaer & Saratoga Railroad Company, of the par value of $2,000,000. The total income of the Rensselaer & Saratoga Railroad Company as a corporation, and which has come into its treasury during the calendar year ending December 31, 1913, was $4,600, made up as follows:

From Delaware & Hudson Company under the lease............$1,000 00
From Albany & Vermont Railroad Company under the lease from
  the Rensselaer & Saratoga Railroad Company to the Albany
  & Vermont Railroad Company.............................  800 00
Interest on $70,000 investments of Rensselaer & Saratoga Com-
  pany ................................................... 2,800 00
Cash on hand December 31, 1913, which produced no revenue,
  amounted to .......................................... 2,436 87."

Said return further showed that the plaintiff was entitled to certain deductions which were allowed. An income tax for five-sixths of the year 1913—that is, from March 1, 1913, through December 31, 1913— was assessed against the plaintiff, which amounted to $6,659.77, and was arrived at as follows:

Dividends on $10,000,000 capital stock at the rate of 8 per cent.
  per annum .............................................$800,000 00
Amount received under lease from Delaware & Hudson Company
  for organization purposes................................ 1,000 00
Amount of income from investments......................... 3,600 00
                                                         _____
                                                         $804,600 00
Five-sixths of this amount is..............................$670,500 00
Deduct therefrom disbursements made from March 1, 1913, through
  December 31, 1913....................................... 4,523 40
                                                         _____
Leaving net alleged income from March 1, 1913, through December
  31, 1913.............................................$665,976 60
                                                         _____
One per cent. of this amounts to .......................$ 6,659 77

There was an error and a refund made of $533.33. The tax was paid under protest and due proceedings, so far as form is concerned, taken to obtain a repayment of this tax and enable the plaintiff to bring suit for a recovery thereof and maintain same, if erroneously or illegally assessed and collected.

In 1871, the plaintiff company by a written lease, a copy of which forms a part of the complaint, leased to the Delaware & Hudson Canal

Company, a railroad corporation of the state of New York, all its railroads, railroad property, etc., perpetually, or during the life of the charters of the lessor and any and all renewals of same, and in consideration thereof the lessee agreed to pay as follows:

"Yielding and paying therefor unto the party of the first part, its successors or assigns, *an annual rent* to be paid as follows:

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*

"10. And the said party of the second part, in consideration of the demise, covenants, and agreements herein contained and to be performed, fulfilled, and kept on the part of the party of the first part, its successors and assigns, hereby covenants and agrees that it will pay, as and for the annual rents aforesaid, semiannually, the interest accruing and to become due and payable from and after the date of these presents, upon $1,625,000 of mortgage bonds made, guaranteed, or assumed by the party of the first part, embracing the following bonds:

Saratoga & Whitehall first mortgage bonds, due 1886; interest, March and September 1st, in New York.................$400,000 00
Troy, Salem & Rutland first mortgage bonds, due 1890; coupons, May and November 1st, in New York................ 500,000 00
Glens Falls Railroad bonds, due 1894; coupons, January and July 1st ....................................... 125,000 00
Rensselaer & Saratoga first bonds, due in installments July 1st up to 1873............................... 150,000 00
Rensselaer & Saratoga second, due July 1, 1880............. 300,000 00
Rensselaer & Saratoga second, due July 1, 1887............. 150,000 00

"11. Also the interest and $5,000 annually on the principal of the bond of the party of the first part to the city of Troy, on account of the Troy Union Railroad Company, the balance of the principal remaining unpaid thereon, not exceeding the sum of $65,000.

"12. Also the interest on $375,000 of 7 per cent. bonds to be issued by the party of the first part, and the interest guaranteed by the party of the second part as hereinafter provided. The payments of interest on bonds to cease with the payment of the principal.

"13. And the said party of the second part will also, upon the 1st day of January, 1872, pay a semiannual dividend of 3½ per cent. upon the capital stock of the party of the first part, not exceeding 60,000 shares of $100 each; a like dividend of 3½ per cent. upon said stock on the 1st day of July, 1872; and will also pay a semiannual dividend of 4 per cent. on such capital stock upon each 1st day of January and the 1st day of July thereafter, it being understood, however, that the interest and dividends to be paid as aforesaid shall and may be paid directly to the respective bondholders and stockholders.

"14. And the said party of the second part will also pay the rents accruing and to become due and payable from and after the date of these presents, on the following named leases, to which the party of the first part is a party, and observe and fulfill the terms and conditions thereof:

Rent Per Annum

Lease of the Saratoga & Schenectady Railroad............$31,750 00
Lease of Albany & Vermont Railroad..................... 20,000 00
Lease of Rutland & Whitehall Railroad................... 15,492 00
Lease from New York Central Railroad Company........... 2,500 00
Lease of Green Island lots............................. 3,091 50
Joint lease with Troy & Boston Railroad Company of the Troy & Bennington Railroad Company, half rent.............. 7,700 00

"It is understood, however, that the party of the first part is to pay to the party of the second part two-thirds of the amount of all accrued interest on the bonds of the party of the first part up to and including the 30th day of June, 1871, and two-thirds of the amount of rents on leases which are due or accrued on that day.

"15. And the said party of the second part hereby further covenants and agrees, in manner aforesaid, that on presentation of the respective bonds, and of the scrip, certificate of stock respectively, the interest and dividends upon which are to be paid as herein provided by the party of the second part, it will, by a proper instrument in writing, to be indorsed or stamped thereon respectively, and duly executed, guarantee to the owner and holders thereof payment of the interest and dividends thereon, as aforesaid, the dividends to be payable semiannually on the 1st days of January and July, as aforesaid, and the interest to be payable according to the terms and conditions of the said bonds; and in case the party of the first part, at any time, shall desire to use new bonds, either in renewal of or to obtain means with which to pay bonds now outstanding, or any portion of them that the party of the second part will indorse or stamp such new bonds in the manner aforesaid and deliver the same to the party of the first part: Provided that the new bonds so indorsed or stamped shall be for the same amount as the bonds then surrendered to the party of the second part for cancellation.

"16. And in case the aforesaid bonds, or any of them, shall at any time be converted into stock, that thenceforth the party of the second part will pay, in lieu of the aforesaid interest on said bonds, semiannual dividends on said stock, at the rate of 3½ per cent., and upon due presentation of such new stock will indorse or stamp upon the same a guaranty of the payment of such semiannual dividends according to this agreement; and in all cases of new certificates being issued on the return of guaranteed certificates, or transfer of guaranteed shares, or new bonds having been issued in place of guaranteed bonds, the said party of the second part shall indorse or stamp the like guaranty on such new certificates and bonds: Provided, however, and it is hereby understood and agreed that in case the party of the first part shall fail to keep and perform these presents upon its part, that thereupon such guaranty, and each and every of them, shall become and be null and void.

"17. And the said party of the second part further covenants and agrees, in manner aforesaid, that during the term hereby granted it will, at its own cost, risk, and expense, maintain, preserve, and keep the aforesaid railroads in good working condition and repair and suitable for the transaction of all the business that can be reasonably done thereon, and will also maintain, preserve, and keep the side tracks, station houses, machine shops, fixtures, appurtenances, tools, machinery, rolling stock, and equipments belonging and appertaining to the said railroads in good repair, order, and condition, and will maintain and keep in order all fences, cattle guards, and warning boards which are' or shall·be necessary or required by law, and will operate, employ, and use the said railroads, their fixtures and appurtenances, in such manner as to do and perform, in a proper manner, all the business offered to and which can be reasonably done upon the same, and will perform all and every duty and obligation towards the public which the party of the first part would be legally bound to do and perform under its aforesaid charter if these presents had not been executed.

"18. And the said party of the second part further covenants and agrees, in manner aforesaid, that during the time of this demise it will pay, bear, and discharge all taxes and assessments of every description, assessed, imposed, levied, and accruing upon the railroad's property and effects hereby demised, and upon the business done upon the said railroads from the day of the date hereof, in the same manner and to the same extent as the party of the first part would be liable to pay if these presents had not been executed. And if by any change of the law the present tax or duty required of the said party of the first part shall be required of the said stockholders, then the said party of the second part shall pay the same.

"19. But the party of the second part shall not be required to pay the present income tax upon the aforesaid interest and dividends, or any tax thereon imposed, or hereafter to be imposed, by whatever name the same may be called. And if the law under which the tax is or may be levied requires the party of the second part to pay the same, then the amount of tax so paid may be deducted and kept back from and out of the aforesaid interest and dividends.

"20. And, further, that the party of the second part will pay all expenses for operating, construction, repairs, pay rolls, salaries, and otherwise incurred on account of the railroad and demised premises, from the day of the date hereof, and will also pay and discharge all damages which may be recovered against the said party of the first part for injuries to persons or property, or for negligence or breach of duty as carriers or warehousemen, and in all respects save the said party of the first part harmless and indemnified from all damages, losses, and penalties which may be incurred or arise in or by the conduct, use, or operation of the said railroad, from and after the 1st day of May, 1871.

"21. And it is hereby further mutually covenanted and agreed that in case of default in the payment of the rents herein reserved and agreed to be paid, or of the rents, dividends, or interest as herein provided, and if the same or any part thereof shall remain unpaid for the space of 60 days from and after the time when the same shall become due and payable, then the said party of the first part shall have the right to enter upon and take possession of all the property hereby leased, and all depots, shops, buildings, tracks, and other permanent property or rolling stock added thereto, and that the party of the second part will not hinder or prevent such entry nor the taking possession and using of all of the said property by the party of the first part for its own benefit and use, and that this lease shall terminate upon the party of the first part so taking possession of the demised premises.

"22. And, further, that this lease shall not be assigned by the party of the second part without the consent, in writing, of the party of the first part first had and obtained.

"23. It is mutually agreed that the monthly assessments for current expenses of the Troy Union Railroad Company, from and after the 1st day of May instant, are to be borne and paid by the party of the second part.

"24. It is further mutually agreed, by and between the parties hereto, that there shall be kept at the office of the party of the second part a book or register containing a record, in proper form, of the aforesaid stock, and of each and every of the aforesaid bonds, and of the bonds which may be issued in substitution therefor, which register shall be open, at all reasonable and proper times, to the inspection of the party of the first part, its successors or assigns, and that there shall be a transfer agency and office at the city of New York, the expenses of which shall be borne by the party of the second part."

It is seen that the property, etc., of the plaintiff is turned over to the Delaware & Hudson Company, which is to operate same, pay all expenses of operating and keeping in repair, etc., and also pay the interest on its bonded indebtedness and 8 per cent. dividend on its outstanding capital stock, but which dividends are to be paid not to the plaintiff company, the owner of the leased property, but directly to the stockholders, the lessee keeping books showing the owners of such stock and all transfers thereof.

Here the contention arises. The plaintiff contends that, having leased and turned over to the Delaware & Hudson Company all its property, with a provision that the dividend of 8 per cent. on the stock is to be paid directly to the stockholders by the lessee, and not to the lessor, such lessor, Rensselaer & Saratoga Railroad Company, does not receive, within the meaning of said Income Tax Law, any net income; while the collector contends that this provision for the payment of this dividend on the stock (by whatever name it may be called) to the stockholders direct, instead of through the medium of the lessor company, does not deprive the amount so paid of its quality and character as income received within the meaning of said statute. The collector contends that this sum, or these sums, to be paid the stockholders, is

rent paid for the use of the property, and so denominated in the lease, and is income, and net income, inasmuch as it is by the terms of the lease discharged from all deductions for expenses, etc., which are otherwise paid in operating the road, and constitutes a net sum for distribution to stockholders.

The directors and officers of the plaintiff corporation hold or held this railroad property for the benefit of the stockholders, and it, as a corporation, was and is the legal owner thereof. Consequently all rents received in the first instance belong to the plaintiff corporation. Moneys derived from rents and surplus earnings would be held by it, and owned by it, and dividends from surplus earnings should be declared and paid by it. If this money paid by the Delaware & Hudson Company going to stockholders under the agreement had been paid to the plaintiff corporation, and the lease had so provided, it could not be successfully contended that it was not income, and income received by the corporation. By agreement between lessor and lessee, assented to and acquiesced in by the stockholders, it is paid directly to them. Until so paid into the hands of the stockholders, is it or is it not the property of the corporation itself? Is rent or compensation for the use of corporate property owned by the corporation the property of the corporation, or of the stockholders, prior to the declaration of a dividend and payment thereof?

Suppose the Delaware & Hudson Company should not keep its agreement, but should make default in paying these dividends, who would sue to recover the sums ("rents") agreed to be paid? The agreement or lease referred to is between the "Rensselaer & Saratoga Railroad Company by Geo. H. Cramer, President; Attest, H. C. Lockwood, Treasurer Rensselaer & Saratoga R. R. Co.," and "The President, Managers and Company of the Delaware & Hudson Canal Company, by Thomas Dickson, President; Attest, Charles P. Hart, Treasurer Delaware & Hudson Canal Company." The stockholders are not a party to the agreement.

It seems to me very clear that these moneys agreed to be paid to the stockholders are rents received in legal effect by the plaintiff corporation, and are net income of the corporation, subject to any legal deductions under the law in question, and that the provision for payment direct to the stockholders is a convenient mode and manner of making distribution to the stockholders. I do not think this plaintiff corporation, by making such an agreement, could or did divest itself of its corporate rights, powers, and liabilities in regard to the money to be paid for the use of the property, and subject to taxation, state and national, if paid directly to the corporation. If by such agreement the money agreed to be paid the stockholders became theirs before paid and while in the hands of the lessee, and remained theirs, it was not, of course, subject to this income tax as income of the corporation. The corporation would have no income, and no tax could be imposed as against it. As income of the several stockholders it would, if sufficient in amount (after making all proper deductions from the income of the individual), pay a tax, not as income of the corporation, but as income of the individuals owning the stock. I think these sums of

money agreed to be paid the stockholders by the lessee was rent, money to be paid for the use of the property of the corporation, and was the property of the corporation. Ultimately it would belong to the stockholders, after payment of the debts and liabilities of the corporation, but is subject to any tax, state or national, the state or nation lawfully imposes on such income.

[2] This agreement was made prior to the enactment of the present Income Tax Law, and hence there was no fraud on the law intended. However, if a corporation may escape the payment of an income tax on its net income by leasing its property and providing for the payment of its surplus earnings direct to its stockholders by the lessee, few corporations will hereafter pay this income tax, unless it is held such agreements are fraudulent and void, as made to evade the tax. As to income taxes imposed by laws hereafter enacted, there may be an avoidance of the tax by leasing the property of the corporation and providing for the-payment of the surplus earnings direct to the stockholders.

It seems to me that this whole question centers about the proposition: Does this lease operate to divest the plaintiff corporation of ownership of the *rents* to be paid before they accrue and become payable, and of which rents the sums to be paid the stockholders form a part? The legal ownership of rents for corporate property is in the corporation, notwithstanding its agreement that the lessee shall pay same directly to the stockholders. It seems to me clear that all sums of money and considerations agreed to be paid for the use, possession, and occupation of the corporate property belongs to the corporation, the legal owner of such corporate property. It is by way of dividends that the stockholders are entitled to the earnings of the road or any part thereof. That the sums agreed to be paid by the lessee for the use of the lessor's property are earnings cannot be questioned. Such sums are the consideration paid for the use of the property.

There are many cases holding that where dividends are actually declared to stockholders, and the stockholders are indebted to the corporation, the corporation may withhold the dividend or enough thereof to satisfy its claim. If this railroad corporation owes this income tax to the government and it is compelled to pay it, and this lease, as it does by its terms, provides that the only revenues or income of the corporation is to be paid to the stockholders direct, it seems to me that by notice to the lessee and by an equity action, if necessary, provision may be made for the retention by the lessee and payment to the lessor of a sufficient amount to satisfy the tax. This may not be the remedy, but there must be a way to protect the corporation. I do not think the fact that this lessor corporation has no available funds or money in its possession with which to pay the tax has anything whatever to do with the question whether or not it has a taxable income under the federal law referred to.

[3] The attorney for the plaintiff here says, and correctly says:

"A stockholder is not an agent of the corporation in which he owns a share. *He has no legal title to any* of its property. The functions of stockholders are exceedingly limited. Stockholders cannot enter into contracts with third per-

sons for they do not represent the corporation"—citing Victor, etc., Co. v. American Co. (C. C.) 189 Fed. 359.

Then how could these stockholders contract with the Delaware & Hudson Company with reference to the "rents" for the use of the corporate property of this lessor corporation, and how do they obtain any title to the rents, or any part of same, prior to payment over to them?

In Anderson v. Morris & E. R. Co., 216 Fed. 83, 85, 90, 132 C. C. A. 327, the case arose under the Corporation Tax Act of August 5, 1909 (36 Stat. 112, c. 6) which provided:

"That every corporation * * * organized for profit and having a capital stock represented by shares * * * and engaged in business in any state * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation * * * equivalent to one per centum upon the entire net income over and above five thousand dollars, received by it from all sources during such year."

The question to be decided and actually decided in that case was whether the corporation "was engaged in business," was "carrying on or doing business," and the court held it was not, having leased all its property, etc., and turned it over to the lessee, which was managing and operating it, and which paid interest on its debts and fixed sums to its stockholders on their stock as compensation or rents to the lessor for the use of such corporate property. The lease in that case was very similar to the one now under consideration in the instant case. On the question of "entire net income" on which the tax was assessed for the privilege of doing business the Circuit Court of Appeals (this, the Second circuit) said:

"But to make the act applicable, the lessor company must not alone exist 'under the laws' of the state which created it. It must, in addition, have a net income over and above $5,000, etc. It is said the lessor company does not meet that requirement of the law, as no money was paid to it; the rentals having been paid, not to it, but to its stockholders and bondholders. The notion that a corporation is an artificial entity distinct from the members who compose it is a fiction of the law, which the courts recognize for some purposes and disregard for others. Without going into the matter at length, it suffices to say that the fact that the lessee paid the rent, not to the corporate entity, but to the stockholders and bondholders, cannot prevent the act from applying to the money so paid if the other conditions of the act make its terms applicable. The fiction referred to cannot be permitted to accomplish a fraud upon the statute and an evasion of its obligations."

While the case was decided on the proposition that the corporation was not "carrying on or doing business" within the meaning of the statute, the question was more or less necessarily involved whether it had "a net income over and above five thousand dollars," and the court decided that it did have "a net income," made up, in part at least, of the sums paid to the stockholders direct and paid for the use of the property as rent.

As the language of the Circuit Court of Appeals in Anderson v. Morris & E. R. Co., supra, just quoted, accords with my views of the law and was a decision rendered in this, the Second, circuit, I regard it as controlling in this case, even if not binding on me.

[4, 5] This complaint, demurred to, says or alleges as a fact that the plaintiff corporation had and has no income; but as all the facts are stated, and the lease is a part of the complaint, this allegation is a mere conclusion. On the facts stated it appears that the plaintiff did have an income, consisting of the sums paid to the stockholders as dividends by the lessee. A demurrer admits all facts well pleaded, but not mere conclusions. I have not taken time to point out the differences between the lease in the Morris & Essex Case and the lease in the instant case, as I do not regard them at all material, so far as the question involved here is concerned. The real question is: Did the lessor have and derive a net income from its leased property? The question is, not what disposition did it make of that income, or by what mode or at what time, but did the corporation have a net income? Bouvier (14th Ed.) defines "income" as:

"The gain which proceeds from property, labor or business; it is applicable particularly to individuals. The income of the government is usually called revenue."

Is it not clear that these rents, including the sums paid the stockholders under the agreement to pay them a dividend, are gains which proceed from the property of the corporation? See, also, "Income," 22 Cyc. 63–67. The stockholders have no power to lease these railroad properties, and do not. The lessee expressly agrees to pay "*a dividend*" to the stockholders. In other words, the corporation in the lease provides for rents sufficient to pay a substantial "dividend" semiannually to the stockholders; but, instead of taking these rents and paying them to the stockholders, it provides for payment direct to the stockholders by the lessee. It is immaterial, in my judgment, that the plaintiff corporation was not itself actually doing business by operating the railroads. In Anderson v. Morris & Essex Co., supra, where the court held as stated and quoted, it expressly held and said (216 Fed. 91, 132 C. C. A. 335):

"The lessor company was not an actively operating concern. Under the terms of this lease the lessor corporation had practically gone out of business and was disqualified from any activity respecting the operation and management of the railroad business which it had been incorporated to carry on."

In short, I cannot assent to the proposition that a railroad corporation, which prior to the enactment of the act of October 3, 1913, had leased its properties during its charter life and any extension thereof for a fixed rent or compensation, payable mainly directly to those holding bonds secured by mortgage on such properties, and by keeping the road in repair, etc., and by paying a per cent. or dividend each year to the stockholders—in this case 8 per cent. after the first year—because of that fact is outside the operation of such Income Tax Law. I think it must be held that a taxable "net income, not only arose, but accrued," to the plaintiff corporation, and that the tax sought to be recovered of the defendant was properly levied and assessed.

[6] I do not see that the doctrine of novation has anything to do with this case. If A. owes B. $10,000 as rent for his property, to be paid annually, January 1st, and B. owes C. $10,000 falling due January 1st, and B. says to A., "You pay the money you owe me to C., as

I owe him," and this is done, the debt of A. to B. is discharged. He has paid the money to C. pursuant to the authority and direction of B., and C. has accepted it. But when B. comes to make out his income tax return, can he say that the $10,000 is not to be taken into account as income, inasmuch as he never received the money, but had it paid to C. and applied in payment of his debt to C.? Is it any the less income derived from the leasing of his property for the reason he directs and consents to the application of it in payment of his just debt? He, of course, would be entitled to all just deductions. Here the United States is concerned and its revenues are affected. The United States has never assented to a payment of the dividends to stockholders derived and payable from the rents of this railroad property directly to such stockholders, freed and discharged from the tax imposed by law on the net income of the corporation.

It seems to me clear:

1. That the moneys to be paid by the Delaware & Hudson Canal Company to the creditors and stockholders of the Rensselaer & Saratoga Railroad Company are rents or compensation to the Rensselaer & Saratoga Railroad Company for the use and occupation of its property, and, as the plaintiff corporation pays no operating or repair expenses, constitutes, aside from the interest paid, net income within the meaning of the law in question.

2. It is immaterial, so far as that question is concerned, that such dividends are fixed as to amount by the lease, and by its terms paid directly to such stockholders.

3. It is also immaterial that the plaintiff corporation is not possessed of money or other cash revenues with which to pay the tax. It has power to borrow.

4. The corporation could not exonerate itself from liability for this tax subsequently imposed under a law thereafter enacted by making a lease of its property which provides for the payment of all its surplus revenues directly to its stockholders.

On the face of the complaint a cause of action is not stated, and the demurrer is sustained. There will be an order and judgment accordingly.

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes