**DUFFY, Former Collector of Internal Revenue, v. PITNEY et al.***

**FERGUSON, Collector of Internal Revenue, v. SAME.**

(Circuit Court of Appeals, Third Circuit. October 9, 1924.)

Nos. 3119, 3120.

**1. Internal revenue ⊂⇒7—Tax paid by obligor corporation on tax-free bonds is not part of "income" of bondholder.**

The normal tax paid by a debtor corporation on tax-free covenant bonds, as required by Revenue Act 1917, § 1205 (Comp. St. 1918, § 6336i [c]), and Revenue Act 1918, § 221 (Comp. St. Ann. Supp. 1919, § 6336⅛jj), is not a part of the "income" of the bondholder, and not required to be included in his return.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

**2. Internal revenue ⊂⇒7 — Contributions to Grand Army post held deductible from income; "corporation organized and operated exclusively for charitable purposes."**

Under Revenue Act 1918, § 214 (a) (11), being Comp. St. Ann. Supp. 1919, § 6336⅛g (a) (11), authorizing deductions from individual incomes of contributions made to "corporations organized and operated exclusively for charitable purposes," contributions to a Grand Army post, organized under a state law as a

*Certiorari denied 45 S. Ct. 231, 69 L. Ed. —.

charitable association, and whose funds are actually used for charitable purposes, are deductible.

Thompson, District Judge, dissenting.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Actions at law by John O. H. Pitney and John R. Hardin, executors of the will of Marcus L. Ward, deceased, against Charles V. Duffy, former Collector of Internal Revenue, and against Frank C. Ferguson, Collector of Internal Revenue. Judgments for plaintiffs, and defendants bring error. Affirmed.

For opinion below, see 291 F. 621.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., Walter H. Bacon, Jr., Asst. U. S. Atty., of Bridgeton, N. J., and Nelson T. Hartson, Sol. of Internal Revenue, and Thomas H. Lewis, Sp. Atty. Bureau of Internal Revenue, both of Washington, D. C., for plaintiffs in error.

Pitney, Hardin & Skinner, of Newark, N. J. (Corwin Howell, of Newark, N. J., of counsel), for defendants in error.

Murray, Aldrich & Roberts, of New York City (Winthrop W. Aldrich and Harrison Tweed, both of New York City, of counsel), amici curiæ.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge. This record comprises two actions brought by the same plaintiffs, as executors of the will of Marcus L. Ward, against two defendants, collectors of internal revenue for different periods, to recover taxes which, it is claimed, were unlawfully assessed and collected. The suits were brought against different collectors for the reason that some of the taxes were paid to one and some to the other. The same questions of law arose in both cases. They were therefore consolidated and, a jury being waived, were tried to the court. Separate judgments were entered for the plaintiffs. Coming here on the defendants' writs of error, they were reviewed together and may be disposed of in one opinion.

Two questions are involved: First, was the tax equal to two per cent. of interest on tax-free covenant bonds, withheld by corporate obligors and paid directly to the Government, taxable income of the obligee under the provisions of the Revenue Acts of 1917 and 1918; and second, were contributions to a Grand Army Post deductible in computing net income?

[1] The facts from which the first question arose were as follows: Marcus L. Ward, in his income tax return for the year 1917, returned (Item G) the sum of $83,039.93 as interest received on bonds containing tax-free covenants, upon which, later, a normal tax and a surtax were levied. A part of the normal tax, being two per cent. of the interest and amounting to $1,660.80, was withheld at the source and paid to the Government. Elsewhere in the return he included other income but nowhere did he include as income the last named item. An exactly similar situation prevailed as to his income tax return for the year 1918, the corresponding figures of interest received and tax withheld at the source being $77,930.00 and $1,558.60. After Ward's death in 1920, audits were made of the two returns and, upon the theory that the sums withheld at the source and paid the Government as taxes were "in the nature of income" received by the taxable and should have been included in his returns, the Commissioner revised the returns by inserting these items and assessed additional taxes which, because of high surtax rates, amounted to $581.20 and $1,059.84 respectively. The executors of the deceased taxable paid these taxes under protest and after the usual procedure brought these actions to recover them, raising (in this branch of the case) the single question whether the two amounts, $1,660.80 and $1,558.60 for the years 1917 and 1918, respectively, representing taxes equal to two per cent. of interest which corporate obligors withheld and paid the Government, were elements of "taxable income" which should have been included by the decedent in computing his gross income for the years named.

The provisions of the law bearing upon this question are Sections 1205 and 1207 of the Revenue Act of 1917 (40 Stat. 300 [Comp. St. 1918, §§ 6336i, 6336l]) and Sections 211, 212, 213, 221 and 234 of the Revenue Act of 1918 (40 Stat. 1057), being Comp. St. Ann. Supp. 1919, §§ 6336⅛ee, 6336⅛f, 6336⅛ff, 6336⅛jj, 6336⅛pp. The relevant provisions of these acts are enough alike to permit reference to the provisions of only one of them. We shall take the Act of 1918.

Section 212 states that "the term 'net income' means the gross income as defined in Section 213, less the deductions allowed by Section 214." Section 213 defines gross income as including "gains, profits, and income [derived from named sources]; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." The act further provides (Section 210 [Comp. St. Ann. Supp. 1919, § 6336⅛e]) that, when the net income of a taxable has been ascertained in the manner prescribed, "there shall be levied, collected, and paid for each taxable year upon the net income of every individual a normal tax" at the rate of twelve per centum of the "net income" and a surtax at a rate determined by the size of the income. We have nothing to do with surtaxes. Our only inquiry is whether the deceased taxable correctly ascertained his "net income" and whether the normal tax thereon has been "levied, collected and paid."

For the uneven figures of Ward's large income from bonds containing tax-free covenants, we shall, for convenience, substitute an illustrative figure of $50 income supposedly received by him as interest on one 5 per cent. bond containing such a covenant. The Government's only concern in this sum of $50 was to regard it as a subject of taxation. Its right to levy and collect taxes upon it under the cited statute depended upon whether it was "income" within the meaning of the statute. Admittedly the $50 was "interest," and "interest" is "income" within the definition. Therefore a normal tax of 12 per cent., or $6, was properly levied upon this item and for the full payment of this sum the taxable ordinarily would have been liable. But the $50 interest was paid by a corporate obligor upon a bond in which it had obligated itself, in effect, to pay the obligee interest in full, "without deduction for any tax or taxes now imposed or that may hereafter be imposed by any law upon the obligation," and "without deduction for any tax which the said company may be required by law to retain."

Bonds containing these and like provisions have long been known as bonds with "tax-free covenants." Of the existence of millions of such bonds, outstanding and in force, Congress had full knowledge when it came to enact income tax legislation. It might have ignored them had it desired to do so and have imposed payment of the full normal tax upon the taxable, but it recognized that holders of bonds of this class had acquired by contract certain definite advantages which had entered into the price paid for them and of which they should not be deprived without reason. Being concerned primarily in obtaining the full tax on the interest paid and income received, Congress found a way of making the collection of the whole tax certain and at the same time sav-

ing to the holders of tax-free covenant bonds their peculiar advantage. So it provided (Section 221 [b] of the Act of 1918) that:

"In any case where bonds, mortgages, or deeds of trust, or other similar obligations of a corporation contain a contract or provision by which the obligor agrees to pay any portion of the tax imposed by this title upon the obligee, * * * or to pay the interest without deduction for any tax which the obligor may be required or permitted to pay thereon or to retain therefrom under any law of the United States, *the obligor shall deduct and withhold a tax equal to 2 per centum of the interest upon such* * * * *obligations.*"

Returning to our illustrative figures, what happened in this case was that Ward received $50 as interest upon a tax-free covenant bond. He included it in his income tax return as he was required to do. This sum was liable to a 12 per cent. normal tax—a tax of $6. Two per cent., or $1.00, however, was withheld at the source and was paid directly to the Government by the obligor out of its own funds as by its stipulation in the covenant and the command of the statute it was bound to do. Ten per cent., or $5.00, was paid by Ward. In this arrangement the obligee taxpayer received his interest in full according to the tenor of the bond and the Government received its tax in full according to the terms of the statute. Although it has received the full amount of the tax, the Government, speaking through the defendant collectors, now maintains that the advantage which the holder of a bond derives from its tax-free covenant is "in the nature of income" received by him and (translating this advantage into money by the amount retained and paid at the source) he should have included it in his gross income. Stated in our illustrative figures, the Government contends that Ward should have included in his income tax return not only the $50 interest which he received but the $1.00 tax withheld at the source, thus making $51 of income on which the normal tax of 12 per cent. should have been levied, amounting to $6.12. Whether this contention is sound depends upon whether the sum withheld at the source ($1.00) was income or tax.

Applying the customary canons of construction to this tax legislation (Spreckles Sugar Co. v. McClain, Collector, 192 U. S. 397, 24 S. Ct. 376, 48 L. Ed. 496; Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211), we do not believe in such case that the sum withheld at the source is income.

It does not fall within any accepted definition of the term. Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 64 L. Ed. 521, 528, 9 A. L. R. 1570, 1577. It is not a "gain" or "profit" derived from any of the sources named in the statute (Section 213), nor (whatever it is) has it ever been "received" by the taxable. It is not property, nor is it a right to property for, not being payable to the obligee, he cannot recover it in an action at law against the obligor. In its effect upon the obligee it is at most an intangible but very real advantage for which he has contracted and as a result of which a part of his taxes is paid by another. In thus contracting for the payment of a part of his tax by another the taxable in this case did only what Congress expressly permitted him to do. Therefore his conduct was lawful and was in no sense an evasion of the payment of taxes or an obstruction to the collection of taxes, as in some cases relied upon by the defendants. Houston Belt & Terminal Railway Co. v. United States, 250 F. 1, 162 C. C. A. 173; Blalock v. Georgia Railway & Electric Co., 246 F. 387, 158 C. C. A. 451; Rensselaer & Saratoga Railroad Co. v. Irwin (D. C.) 239 F. 739; Id., 249 F. 726, 161 C. C. A. 636. We are of opinion, therefore, that the sum withheld at the source in obedience to the statute is a tax. The best authority for this is the statute itself, and the statute calls it a "tax." Being a tax, we cannot find that the Revenue Act requires that it be included in a return as "income" and that the act intends thus to impose a tax upon income and also a tax upon a tax.

In holding that "a tax equal to 2 per centum of the interest upon such bonds," withheld at the source (quoting Section 221 [b] of the Act of 1918), is not "income" and, therefore, should not be included in a tax return of the bondholder, it would seem that the case is ended; but the defendants urge that, if a tax, it is nevertheless a tax upon the holder of the bond and if a part of it is paid by another the bondholder receives his interest in full (100 per cent.) and 2 per cent. more,—in effect 102 per cent.,—and, therefore, he should be taxed upon the total percentage. The plaintiff, on the other hand, maintains that the tax is upon the obligor corporation. In this regard it is certain that the act imposes upon the corporation the duty of paying the tax to the extent of 2 per centum of the interest. With this duty upon the corporation, the taxable obligee is expressly allowed to deduct this tax in his return, but the corporation obligor is not

allowed to deduct it in ascertaining its own net income. (Section 234 of the Act of 1918.)

Whether there is anything in the provision denying an obligor corporation the right in ascertaining its own net income to deduct a tax it has paid upon the income of its obligee as signifying a tax upon the corporation, it is clear that the tax is on "income" and that the provision against its deduction by the corporation accords with various revenue acts in which Congress has uniformly refused to allow deductions of income and excess profits taxes. However, Congress provided against deduction of taxes of this class by the corporation and in doing so it acted within its power. Ludington v. McCaughn (C. C. A.) 1 F. (2d) 689.

[2] The facts from which the second question arose were these: During the calendar year 1918, Marcus L. Ward contributed the sum of $300 to the Marcus L. Ward Post No. 88, G. A. R., Department of New Jersey. During the year 1919 he contributed a like amount to the same Post. In his income tax return for those years he deducted these amounts, under authority, as he conceived it, of Section 214 (a) (11) of the Revenue Act of 1918 (40 Stat. 1057 [Comp. St. Ann. Supp. 1919, § 6336⅛g (a) (11)]) which allows a deduction of "contributions or gifts made within the taxable year to corporations organized and operated exclusively for * * * charitable * * * purposes." The Commissioner of Internal Revenue, however, disallowed these deductions and upon the net income increased by their disallowance he levied an additional tax for the year 1918 in the sum of $204 and for the year 1919 in the sum of $192.

The defendant collectors admit that the contributions made by Ward "were intended to be used and were actually used for a charitable purpose, namely, for the relief of certain poor and needy members of the Marcus L. Ward Post," but they maintain, first, that the cited statute does not allow a deduction of charitable gifts of a general character but allows their deduction only when made to a corporation "organized and operated exclusively for charitable purposes;" and, second, that the Marcus L. Ward Post is not such a corporation. On this issue we are of opinion that primarily at least the character of a corporation is determined by its charter. In re Rockefeller, 177 App. Div. 786, 790, 165 N. Y. S. 154. The corporation in question was incorporated and organized under an act of the State of New Jersey entitled "An Act to incorporate benevolent and charitable associations," approved April 9, 1875 (Rev. Laws 1877, p. 79). It appears in its certificate of incorporation, duly filed in 1889, that (quoting literally),

"The sole and exclusive object of the said association is the relief of the members thereof as shall be sickness, casualty, or other cause be rendered incapable of attending to there usual occupation or calling as well as to deffuse the principles of benevolence and charity and also to permit the decent interment of deceased members and such other charitable purposes as may be provided for in the constitution and by-laws."

Thus far it is plain that the Marcus L. Ward Post is within the definition of the statute; but the defendants urge that the test of the character of a corporation is not what it is organized to do but what it actually does, and that, responding to this test, the Marcus L. Ward Post is not operated "exclusively" for charitable purposes. From testimony admitted on this contention it is proved that in the conduct of its affairs the Post collects dues from and lays assessments upon its members which, together with such contributions as it receives, are disbursed for the care of needy widows and orphans of soldiers of the Civil War; in aid of members of this and other Posts who when going from one place to another are in distress, or who are on their way to the Soldiers' Home; for relief generally of members in need; in making donations to hospitals, in buying flowers for the graves of comrades; in meeting the expense of parades on Memorial Day and of Post collations; and, finally, in paying the rent of Post quarters. Meager salaries are paid some officers for services rendered. As no profits are earned, none are distributed. In this respect the corporation is clearly not within the provision of the statute which in allowing a deduction of gifts to charitable corporations excludes gifts to those where a "part of (their) net earnings enures to the benefit of any private stockholder or individual." On the evidence the learned trial judge found that the purposes and actions of the Post were exclusively charitable. He was right.

Finding no error in the trial, the judgments of the District Court are

Affirmed.

THOMPSON, District Judge (dissenting). I am of the opinion that the normal tax paid by the obligor under the terms of the tax-free covenant of the bonds was income, because it is obviously included within the terms of the Revenue Acts of 1917 and

1918, defining income as "gains * * * derived from any source whatever."

I must, therefore, dissent from the majority opinion for the reasons, first, that the language quoted, being plain and unambiguous, is not open to judicial construction; and, second, that the tax paid by the obligor, being gains derived from a definite source, the requirement of section 221 (b) of the act of 1918 that the obligor shall deduct and withhold the tax is no sufficient ground for holding that Congress intended that the gains derived by the obligee from the payment of the tax by the obligor under the act of Congress and the payment of the interest in full under the covenant of the bond, should not be included within its plain definition of income.