EDWARD G. SWARTZ, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36650.   Promulgated April 6, 1932.

*A. S. Lisenby, Esq.*, and *W. D. Zirkle, C. P. A.*, for the petitioner. *Brooks Fullerton, Esq.*, for the respondent.

1074

OPINION.

ARUNDELL: Prior to the year 1919 Edward G. Swartz, individually, owned certain lands, together with the timber thereon, situated in the State of Louisiana, and also owned the timber only on other tracts of land in the same state. Some of this timber was acquired by Swartz prior to March 1, 1913, and some was purchased by him subsequent to that date and prior to 1919.

On August 25, 1919, Swartz entered into a written contract (set out at length in our findings of fact) with the St. Bernard Cypress Company, Ltd., for the cutting of the timber owned by him. Shortly after the contract was executed the St. Bernard Company took possession of the timber, and within a week or ten days from the date of the contract began the construction of camps and log roads. It began the cutting of the timber at its mill in January, 1920.

The cutting was completed in December, 1926, within the estimated period of seven years, and Swartz and/or his assignee received total payments under the contract of $2,037,321.77, the last payment being made in 1929.

The petitioner corporation was organized under the laws of Louisiana, on March 11, 1922, with an authorized capital stock of 3,750 shares of the par value of $100 per share. On the same date Swartz

assigned and transferred to the corporation the said contract of August 25, 1919, together with certain securities, in exchange for all the capital stock of the corporation, except two qualifying shares. Thereafter, all amounts due under the terms of the contract were paid through Swartz to the corporation, and were included in the gross income reported in its respective returns.

The issue raised by the pleadings is whether or not any portion of the payments received by the petitioner in the taxable year 1926 under the contract assigned to it by Swartz constituted gain, profits, or income and, if so, to what extent.

The respondent has amended his answer to allege. that the petitioner is not entitled to any allowance for depletion or for exhaustion of the contract, and that the amount allowed as such deduction in computing the deficiency should be added to income and the deficiency increased accordingly.

Since Swartz owned all but qualifying shares of the petitioner, under sections 203(b)(4) and 204(a)(8) of the Revenue Act of 1926 the basis for exhaustion of the contract in petitioner's hands is the same as in the hands of Swartz. On this point the parties are in agreement, but they do not agree as to what the proper basis is in the hands of Swartz. Respondent contends that the contract between Swartz and the St. Bernard Cypress Company was merely a working agreement between them, and, as Swartz retained title to the timber, the contract cost him nothing. Petitioner contends that under the contract title to the timber passed to the St. Bernard Cypress Company; that it evidenced a completed transaction which, under the Revenue Act of 1918, gave rise to gain or loss and likewise gave Swartz a new basis for exhaustion, namely, the value of the contract at the time of acquisition.

In our opinion the transaction whereby Swartz obtained the contract with the St. Bernard Cypress Company is not such as to give rise to gain or loss, or to provide a new basis either for purposes of exhaustion or the computation of gain or loss on subsequent disposition. The amount Swartz was to receive under the contract in any year was contingent upon the amount of timber cut. While the contract provided for a minimum annual cut, this was subject to conditions under which the amount to be paid Swartz was rendered problematical. The amount to be received by him above the specified sums for the cypress as cut depended entirely on whether the St. Bernard Cypress Company made a profit. Swartz's share was to be determined and paid to him annually. If the company made no money, Swartz would receive only the specified sum of $9 per thousand feet of merchantable cypress and $5 per thousand feet of pecky cypress lumber. Swartz apparently was not of the opinion that the

receipt of the contract in 1919 constituted a closed transaction. At any rate he did not so report it for tax purposes. In fact, none of the parties concerned with the contract have ever regarded it as evidencing a completed sale in 1919, as is now claimed by petitioner. In the years 1922 and 1924, inclusive, petitioner claimed deductions for exhaustion of the timber under the heading of "cost of goods sold," and in 1925 and 1926 it claimed and was allowed deductions for depletion. In forest industries schedules (Form T), filed by the St. Bernard Cypress Company for the years 1920, 1921, and 1922, that company represented that it owned no timber "but buys its timber as cut, currently paying therefor $9 per thousand feet for merchantable cypress and $5 per thousand feet for pecky cypress. There is therefore no depletion." Thus we find all parties interested in the contract, and also the respondent, pursuing a consistent course under which the holder of the contract was considered as the person entitled to an allowance in the nature of depletion. We find nothing in the record before us to convince us that that course was wrong.

Under somewhat similar facts, in *Burnet* v. *Logan*, 283 U. S. 404, the Supreme Court held that the transaction whereby the taxpayer received a promise, subject to contingencies as in this case, should not be regarded as a completed one giving rise to gain in the year the promise to pay was received. In the same case in the Circuit Court of Appeals (42 Fed. (2d) 193), the court held that "where the right to receive moneys is contingent as provided by a contract until the property right secured by the contract has been relieved of its element of risk and turned into cash, the income taxing act does not reach it, and the contingent right is not income."

The record in the present case contains testimony directed to showing the value of the contract when acquired by Swartz and also when he assigned it to the petitioner. We have no doubt that the contract did have some value. But, as pointed out above, it was not received by Swartz in payment for his timber and so there is no occasion for valuing it. Cases of this kind are distinguishable from those in which property is exchanged for securities such as stock or bonds, which pass readily from hand to hand and for which there is an established market. In such cases the property received is regarded as being accepted in payment. See *John B. Atkins*, 9 B. T. A. 140; affd., 36 Fed. (2d) 611; *Atkins* v. *Bender*, 26 Fed. (2d) 690; affd., 36 Fed. (2d) 1018.

The parties argue at length the question of whether title to the timber was conveyed to the St. Bernard Company by the contract of August 25, 1919. The solution of this question does not appear to be decisive of the question before us. Even if title passed, as contended by petitioner, the amounts to be received in the future

would not necessarily be income in 1919 to Swartz, who was on the cash basis. Title to the stock involved in *Burnet* v. *Logan, supra*, undoubtedly passed in 1916, but the promise of the purchaser was not regarded as realized income. On the other hand, a taxpayer actually realizing income on the sale of property may not escape or postpone the tax by withholding delivery of evidence of title.

In our opinion the respondent is in error in the position taken in the present proceeding, namely, that the contract cost Swartz nothing and consequently there is no basis for exhaustion. Whether or not the contract served to convey title, it did divest Swartz of his theretofore absolute rights in the timber. By entering into the contract he parted with his outright ownership of the timber; he was no longer free to dispose of it as he saw fit, but was obligated to let the St. Bernard Company cut it on the terms specified. It is agreed by the parties that the March 1, 1913, value of the timber owned by Swartz on that date was $365,973.48. Thereafter, and prior to August 25, 1919, he acquired additional timber at a cost of $233,540.10. The sum of these amounts, $599,513.58, is the proper basis in Swartz's hands for the computation of gain or loss and depletion. He was entitled to recover that sum upon the sale or other disposition of the timber. We see no sound reason why, under the circumstances here, he should be deprived of that basis. Since the transaction by which the contract was assigned to the petitioner in exchange for its entire issue of stock was one which did not result in either gain or loss to Swartz, and under the statute the basis for exhaustion of the property received by the petitioner would be the same as that in the hands of its transferor, namely, Swartz, and since the transaction by which Swartz acquired the contract was not one in which gain or loss could then be computed, but rather one in which profit to Swartz would be computed as the timber was cut on the basis of the difference between the March 1, 1913, value plus subsequent cost of the timber and the amounts paid to Swartz, we are of the opinion that the proper basis for exhaustion of the contract to the petitioner is the March 1, 1913, value of the timber plus subsequent cost, namely, $599,513.58, and that this amount should be spread over the period of cutting the timber and a pro rata part allowed as a deduction in each year. It appears from the deficiency notice that that is the basis used by respondent in computing deduction for 1926, but if we are wrong in this it may be settled under Rule 50.

We see no merit in petitioner's contention that this case comes within that group in which taxpayers have unsuccessfully attempted to escape tax by assigning income to others, such as *Ormsby McKnight Mitchel*, 1 B. T. A. 143; 15 Fed. (2d) 287. *Rensselear & S. R. Co.* v. *Irwin*, 239 Fed. 739; *Lucas* v. *Earl*, 281 U. S. 111,

and similar cases. In this case Swartz did not merely assign income; he assigned the property which gave rise to the income, as in *Wallace Huntington*, 15 B. T. A. 851, and *M. A. Milan*, 16 B. T. A. 1112, in which the taxpayers conveyed to others notes covering deferred payments on installment sales. See also *J. V. Leydig*, 15 B. T. A. 124; affd., 43 Fed. (2d) 494; *Copland* v. *Commissioner*, 41 Fed. (2d) 501.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

TRAMMELL, LOVE, and MURDOCK dissent.