LUCILLE H. ROGERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15605. Promulgated September 28, 1948.

*George E. Beechwood, Esq.*, for the petitioner.
*William H. Best, Jr., Esq.*, for the respondent.

436

438

OPINION.

OPPER, *Judge*: Although the parties designated their combined enterprise for the operation of vessels under a general agency agreement with the W. S. A. as a "joint venture," it seems clear the term was not used in the technical business sense, certainly not in its accepted meaning for tax purposes.[1]  Internal Revenue Code, sec. 3797 (2).  The actual form adopted for the operation was that of a corporation; not merely an association taxable as such, Internal Revenue Code, sec. 3797 (3)—although more nearly that than a true joint venture, *Morrissey* v. *Commissioner*, 296 U. S. 344—but an actual *de jure* corporation with stockholders, of which petitioner was one, directors, and officers. *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415; *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436.  The two participating groups acquired common and preferred stock and are referred to as "stockholders," the method of selection of directors is provided, and instructions for the designation of officers by the directors are set forth in careful language.[2]  The device adopted was the temporary reconstruction of an existing corporation, but the corporate form and its consequence was no less effective than if a new corporation had been organized for the purpose.

The assets newly acquired by this corporation were the contract with W. S. A. for operation of the vessels and the profits and other proceeds accumulated from its successful prosecution.  All of these were "granted, bargained, sold, conveyed, transferred, assigned and set over"[3] by the corporation in the transaction of November 27, 1944, when the stockholders agreed to disagree.  Petitioner's participation was apparently that of stockholder.  She had nothing to sell except her interest in the corporation itself, and this, far from being sold, was carefully retained.  As to her, the provisions of the original agreement had been fully executed, and merged into her participation as corporate shareholder.

If we are correct so far, it makes no difference whether what the corporation received for the sale of its property was capital gain or ordinary income, since the corporation's tax liability is not presently

---

[1] Even in its loose sense, the term is applied, not to petitioner, but to the two corporate participants: "The directors * * * deem it advantageous for the respective corporations * * * to engage in a joint venture * * *."

[2] Although petitioner contends that there was an agreement to share losses, it is evident that this was so in the corporate, rather than the joint-venture sense; that is, only the capital committed to the venture by way of contribution to the corporation was liable for any losses sustained, not petitioner nor her fellow stockholder, individually.

[3] Petitioner attempts to explain away this language by some obscure reference to requirements of the W. S. A., but neither this, nor the suggestion that the corporation could not sell the contract because of the original agreement and of the required consent of the Government to any transfer, are persuasive.  The original agreement makes no reference to such a situation, being confined to distribution after the W. S. A. contract had been concluded, which it had not been on November 27, 1944.  And if the Government's consent to a sale was necessary, it was obtained.

in issue. Cf. *McAllister* v. *Commissioner* (C. C. A., 2d Cir.), 157 Fed. (2d) 235; certiorari denied, 330 U. S. 826; *Estate of F. S. Bell* v. *Commissioner* (C. C. A., 8th Cir.), 137 Fed. (2d) 454, with *Hort* v. *Commissioner*, 313 U. S. 28; and *Swastika Oil & Gas Co.*, 40 B. T. A. 798; affd. (C. C. A., 6th Cir.), 123 Fed. (2d) 382; certiorari denied, 317 U. S. 639.

Petitioner's profit came through her interest in the corporation. *Cherokee Motor Coach Co.* v. *Commissioner* (C. C. A., 6th Cir.), 135 Fed. (2d) 840. "* * * there can be no doubt that a corporation may normally distribute its assets among its stockholders. When it undertakes to do so, its act is nonetheless a corporate act though its shareholders receive new contractual rights enforceable by them alone against the transferee. That is to say their rights to receive the proceeds on the disposal of corporate assets are strictly derivative in origin. * * * their claims to the proceeds flow from the corporation and are measured by the stake which they have in it. For the rental or purchase payments for the property conveyed by respondent [the corporation] could not lawfully be paid to another without its authority; and it could not lawfully dispose of them to others without the consent of its shareholders." *United States* v. *Joliet & Chicago Railroad Co.*, 315 U. S. 44, 48. "* * * under the theory of the *Joliet* decision [*supra*] the rights of the stockholders were those of distributees of current dividends." *Commissioner* v. *Western Union Tel. Co.* (C. C. A., 2d Cir.), 141 Fed. (2d) 774, 777; see also *Home Furniture Co.* v. *Commissioner* (C. C. A., 4th Cir.), 168 Fed. (2d) 312.

The payment to petitioner was as much a dividend as if it had been made first to the corporation, and by it to her. "* * * all sums of money and considerations agreed to be paid for the use, possession, and occupation [here, the sale] of the corporate property belongs to the corporation, the legal owner of such corporate property. It is by way of dividends that the stockholders are entitled to the earnings of the road * * *." *Rensselaer & Saratoga Railroad Co.* v. *Irwin* (Dist. Ct. N. Dist. N. Y.), 239 Fed. 739, 746; affd. (C. C. A., 2d Cir.), 249 Fed. 726. "The application of the rent [here proceeds of sale] * * * is a mere labor-saving device, the effect being exactly the same as if it be paid to the lessor [seller] and by it paid out as far as necessary to bondholders for interest, and the surplus in dividends to its stockholders." Op. cit., 249 Fed. 726, 728. "There are two steps in the proceeding * * *. There is a payment of rent and there is a distribution of dividends, and the failure to enter these transactions upon the books of account or to carry them through in any physical manner cannot deprive them of their essentially separate and distinct characters." *American Telegraph & Cable Co.*, 2 B. T. A.

991, 1000, 1001; see also *Blalock* v. *Georgia Ry. & Elec. Co.* (C. C. A., 5th Cir.), 246 Fed. 387; *Commissioner* v. *Court Holding Co.*, 324 U. S. 331.

There is not, and can scarcely be, any question raised as to the adequacy of the corporation's accumulated earnings to support the payment of such a dividend, particularly since the major part of the payment for the instant year represented amounts conceded to be the current year's earnings. If for subsequent years accumulated earnings and profits are shown to be inadequate to constitute any payments a distribution of dividends, that is an issue not presented here and upon which we are in no position to express an opinion.

None of the cases cited by petitioner brings this conclusion into question. Those most nearly similar, *First Mechanics Bank of Trenton* v. *Commissioner* (C. C. A., 3d Cir.), 91 Fed. (2d) 275, and *Landreth* v. *United States* (C. C. A., 5th Cir.), 164 Fed. (2d) 340, point up the distinction from this proceeding. In both, a true joint venture was found to exist, the issue being, not whether as here the participants had decided upon a corporation as the vehicle of their arrangement, but whether the relationship was one of employer and employee, rather than of coadventurers. In neither was any corporate stock owned by the participating taxpayer, and in neither was there any contention of receipt of the disputed gain by way of corporate dividend. Since we have concluded here that that was petitioner's sole claim to the payment which she concededly received and the taxability of which presents the only issue, these cases add no support to petitioner's case. We find no error in the deficiency determined.

Reviewed by the Court.

*Decision will be entered for the respondent.*

HARLAN, *J.*, dissenting: The contract between petitioner American Range Lines, Inc., and the American Liberty Steamship Corporation, which initiated the business relationship between the parties, repeatedly referred to that relationship as a "joint venture." This contract is set out in full as an exhibit to the stipulation of facts herein and, as such, is incorporated in the findings of fact. The parties to the contract agreed that one of the contracting parties, American Range Lines, Inc., should modify its structure and bylaws in such a way that each of the other two contracting parties would have exactly equal control therein and that this corporation as modified should be the agency through which the joint venture should be administered. The parties to the agreement banded together to carry out a definite project. They agreed to share all profits and losses and agreed that when the specific project was completed American Liberty

Steamship Corporation would surrender all interest in American Range Lines, Inc. (renamed American Range-Liberty Lines, Inc.) and that all accumulated capital would be divided between petitioner and American Liberty Steamship Corporation.

This enterprise was called a joint venture by its participants; it had all the essential characteristics of a joint venture; and I disagree with the majority view that it was not a joint venture.

The case of *First Mechanics Bank of Trenton* v. *Commissioner*, 91 Fed. (2d) 275, containing facts practically on all fours with those at bar, comes to a conclusion differing from that of the majority opinion herein, and I believe correctly states the law. In the *First Mechanics Bank* case the Commissioner contended that the money received by the taxpayer in settlement with the taxpayer's coventurer was merely money paid by the corporation created to carry out the joint venture as compensation for anticipated wages. The court therein held that the money received in settlement was capital gain from a joint venture. In the case at bar the Commissioner contends, under almost identical circumstances, that the money received by the taxpayer in the settlement represented in part dividends and in part ordinary income. The reasoning in the *First Mechanics Bank* case would seem to require the petitioner's income to be taxed as capital gains.