BLALOCK, Collector of Internal Revenue, v. GEORGIA RY. & ELECTRIC CO.

(Circuit Court of Appeals, Fifth Circuit.   December 16, 1915.   Rehearing
Denied February 2, 1916.)

No. 2807.

1. APPEAL AND ERROR ⚖══750—ASSIGNMENT OF ERRORS—SUFFICIENCY.
    As the object of the rule requiring an assignment of errors is to enable
the court and the opposing counsel to know on what points the counsel
for plaintiff in error intends to ask a reversal and to limit the discussion
to these points, it is a commendable practice to assign only such rulings
as are complained of as reversible error, and where plaintiff in error
relied on the overruling of a demurrer to the petition for a reversal and
assigned such ruling as error, the writ of error would not be dismissed,
because of his failure to assign as error the rendition of the judgment
adverse to him, especially in view of rule 11 (150 Fed. xxvii, 79 C. C.
A. xxvii), which provides that the court at its option may notice a plain
error not assigned.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3074–
3083; Dec. Dig. ⚖══750.]

2. PLEADING ⚖══126—NEGATIVE PREGNANT.
    In an action against a collector of internal revenue to recover back a
part of the excise tax collected from a corporation on the ground that
the corporation was not doing business during a part of the year for
which the tax was collected, allegations of the petition that there were
no earnings of the corporation from March 18th to December 31st, "sub-
ject to tax" on account of a lease of the corporation's property, and
on account of its property being turned over to the lessee, was a negative
pregnant, from which it was to be implied that the corporation did re-
ceive an unnamed amount of income, but that in the opinion of the
pleader, such amount should be excluded from consideration in computing
the amount of the tax.

    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 261–263; Dec.
Dig. ⚖══126.]

3. INTERNAL REVENUE ⚖══9—CORPORATE EXCISE TAX—VALIDITY.
    The tax imposed by Comp. St. 1913, § 6300 et seq., on corporations
organized for profit and engaged in business equivalent to 1 per cent. on
the net income above $5,000 is valid as an excise on the privilege of
doing business in a corporate capacity.

    [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28;
Dec. Dig. ⚖══9.]

4. INTERNAL REVENUE ⚖══9—CORPORATE EXCISE TAX—CORPORATIONS LIABLE.
    A corporation subjects itself to the tax imposed by Comp. St. 1913, §
6300 et seq., by exercising the privilege of carrying on or doing business
for any part of the year for which the tax is imposed.

    [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28;
Dec. Dig. ⚖══9.]

5. INTERNAL REVENUE ⚖══9—CORPORATE EXCISE TAX—COMPUTATION.
    Comp. St. 1913, § 6300, provides that every corporation organized for
profit and having a capital stock represented by shares and engaged in
business shall pay annually a special excise tax with respect to the
carrying on or doing business by it equivalent to 1 per cent. upon its
entire net income from all sources during the year above $5,000.   Sec-
tion 6301 provides that such net income shall be ascertained by making
certain deductions from the gross income received within the year from
all sources.   Section 6302 provides that there shall be deducted from
the net income, the sum of $5,000, that the tax shall be computed upon

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the remainder of such income for the year ending December 31, 1909, and for each calendar year thereafter, and that on or before the first day of March in each year a true and accurate return, setting forth the gross amount of income received during the year, etc., shall be made by corporations subject thereto. *Held*, that the amount of the tax is measured by the corporation's income during the entire calendar year in which the privilege of doing business is exercised, and not by its income during the part of the year that the privilege is exercised if the corporation does not carry on or do business during the entire year, as the prescribed tax is a single and indivisible one, and but one way of measuring the amount to be paid is provided.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⊚⇒9.]

In Error to the District Court of the United States for the Northern District of Georgia; Wm. T. Newman, Judge.

Action by the Georgia Railway & Electric Company against A. O. Blalock, Collector of Internal Revenue for the District of Georgia. Judgment for plaintiff, and defendant brings error. Reversed.

Hooper Alexander, U. S. Atty., of Atlanta, Ga., for plaintiff in error.

Walter T. Colquitt and Ben J. Conyers, both of Atlanta, Ga., for defendant in error.

Before WALKER, Circuit Judge, and FOSTER, District Judge.

WALKER, Circuit Judge. [1] The writ of error is not subject to be dismissed because of the failure of the plaintiff in error to assign as error the rendition of the final judgment for the review of which, and of other proceedings in the case made a part of the record, the writ of error was prayed for and allowed. It is apparent that what the plaintiff in error really relies on as calling for a reversal of the judgment is the action of the court in overruling the demurrer interposed to the petition as amended. This ruling is plainly pointed out in the assignment of errors. The object of the rule requiring an assignment of errors being to enable the court and opposing counsel to see on what points the counsel for the plaintiff in error intends to ask a reversal of the judgment, and to limit the discussion to those points, it is a commendable practice to assign only such ruling or rulings as are complained of as reversible errors. Phillips, etc., Const. Co. v. Seymour et al., 91 U. S. 646, 648, 23 L. Ed. 341; Texas & Pacific Railway v. Archibald, 170 U. S. 665, 668, 18 Sup. Ct. 777, 42 L. Ed. 1188. Besides, the writ of error presents the record for review by this court, and the court, at its option, may notice a plain error not assigned. Rule 11 (150 Fed. xxvii, 79 C. C. A. xxvii).

[2] It is apparent from the petition in the case, as it was amended, that the claim of the plaintiff was that the amount for which it was liable for the year 1912, under the statute providing that:

"Every corporation * * * organized for profit * * * and engaged in business in any state * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year" (Comp. Stat. 1913, § 6300 et seq.)

—should have been computed on its income from January 1, 1912, to March 18, 1912, after which latter date, when an alleged lease went into effect, it was claimed that the plaintiff did not do business within the meaning of the statute. The petition averred that "the amount of the income from January 1, 1912, to March 18, 1912, on which tax should be assessed is $415,377.99, and the tax should be $4,153.78." The averments of the petition do not show the amount of the plaintiff's income between March 18, 1912, and the end of that year, nor that it had no income during that period, nor that there was any mistake in the computation of the amount which the plaintiff had been required to pay if in making that computation it was permissible to take into account income received after, as well as up to and including, March 18, 1912. In an amendment to the petition it was averred:

"That there were no earnings of said Georgia Railway & Electric Company from March 18, 1912, to December 31, 1912, subject to tax under said act, on account of said lease aforesaid and on account of its property being turned over to said Georgia Railway & Power Company."

This statement is a negative pregnant, from which it is to be implied that the plaintiff did receive an unnamed amount of income during the period from March 18, 1912, to the end of that year, but that in the opinion of the pleader that amount should be excluded from consideration in computing the amount of the tax for which the plaintiff was liable.

The averments of the petition do not raise a question as to the liability of the plaintiff under the statute in question to pay a tax with respect to the carrying on or doing of business by it in the year 1912. It is distinctly shown that it did carry on business during part of that year, and it is admitted that part of the amount which had been paid was properly assessed. In this respect the case is unlike the one of McCoach v. Minehill Railway Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842. The lease under consideration in that case, which was held to have had such an effect that the corporation was not to be regarded as doing business in such wise as to make it subject to the tax imposed by the act of 1909, was made and went into effect many years before that act was passed. The opinion rendered in that case, as the one rendered in the somewhat similar case of Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 Sup. Ct. 361, 55 L. Ed. 428, does not deal with the question raised in the instant case, namely, whether in computing the amount of the tax for which the defendant in error became liable by carrying on business in the year 1912, only its income for the part of the year when the business was carried on is to be considered, leaving out of the computation its income during the remainder of the year.

[3-5] It is settled that the tax is valid as an excise on the privilege of doing business in a corporate capacity. Flint v. Stone Tracy Company, 220 U. S. 108, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; McCoach v. Minehill Railway Company, 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842; United States v. Whitridge, 231 U. S. 144, 34 Sup. Ct. 24, 58 L. Ed. 159; Anderson v. Forty-Two Broadway Company, 239 U. S. 69, 36 Sup. Ct. 17, 60 L. Ed. ——, October

term, 1915. For this privilege a corporation subject to the act is required to pay "annually" an amount to be ascertained in a way specified. The provisions of the act as to the returns required to be made by the corporation and as to the method to be pursued in ascertaining the amount payable (Comp. Stat. 1913, §§ 6301, 6302) show that the year which the lawmakers had in mind is the calendar year. It seems plain that a corporation subjects itself to the tax by exercising the privilege of carrying on or doing business for any time during the year. Billings v. United States, 232 U. S. 261, 280, 34 Sup. Ct. 421, 58 L. Ed. 596. The provisions of the act which prescribe the methods to be pursued in ascertaining the amount to be paid show that the amount is measured by the corporation's income during the entire calendar year in which the taxed privilege was exercised, and not by its income while the privilege was being exercised if the corporation was not carrying on or doing business during the entire year. The plain words of the act show that the measure of the amount to be paid by the corporation is "the entire net income over and above five thousand dollars received by it from all sources during such year." No authority is conferred upon the Commissioner of Internal Revenue to assess against a corporation subject to the act any amount less than that ascertained in the way prescribed by the act, or to reduce the amount to be paid because of the fact that during part of the year the corporation was not carrying on or doing business. There is no provision for prorating or lessening the amount to be paid in such a case. The prescribed tax is a single and indivisible one, and there is but one way of measuring the amount to be paid, and that is by the corporation's income during the calendar year in which the corporation subjected itself to the tax by carrying on or doing business within the meaning of the act. We find nothing in the act which indicates a purpose to confer the authority to assess and collect a less amount, or one computed in any other way, in the case of a corporation which ceased to carry on its business during a year in which it subjected itself to liability to pay the tax. The averments of the petition, as it was amended, show that the defendant in error so subjected itself by carrying on its business in the year 1912, and fail to show any noncompliance with the requirements of the act for the ascertainment of the amount it was required to pay.

It is suggested that the result of attributing such a meaning to the statute is to create an unjust inequality between corporations some of which are engaged in business during the entire calendar year and others during only a part of the year, while the amount to be paid by each is measured by its income during the entire year. A similar suggestion was made in the case of Billings v. United States, supra. That case involved the construction of section 37 of the Tariff Act of August 5, 1909 (36 Stat. 11, 112, c. 6), which provided in part as follows:

"There shall be levied and collected annually on the first day of September by the collector of customs of the district nearest the residence of the managing owner, upon the use of every foreign-built yacht, pleasure boat or vessel, not used or intended to be used for trade, now or hereafter owned or

chartered for more than six months by any citizen or citizens of the United States, a sum equivalent to a tonnage tax of seven dollars per gross ton."

That act went into effect on August 6, 1909. It was held that a tax in the amount ascertained in the way provided for in the act was leviable and due on the 1st day of September, 1909, for a use covering that time of such a vessel as the act described, though such use did not extend throughout the year. In reference to the suggestion of inequality, the court said:

"The contention that inequality must be the result from making the tax depend upon mere use without reference to the extent of its duration addresses itself not to the question of power, and is therefore beyond the scope of judicial cognizance." Billings v. United States, 232 U. S. page 281, 34 Sup. Ct. page 424 [58 L. Ed. 596].

From the conclusions above stated it follows that there was a failure to show the existence of a right of the plaintiff to recover any part of the amount it had paid, and that the demurrer to the petition as amended should have been sustained. Because of the error committed in overruling that demurrer, the judgment is reversed.