BLALOCK, Collector of Internal Revenue, v. GEORGIA RY. & ELECTRIC CO.

(Circuit Court of Appeals, Fifth Circuit. November 7, 1917.)

No. 3005.

1. INTERNAL REVENUE ⬡⬡9—CORPORATIONS—CORPORATE INCOME TAXES.
   Under Corporation Tax Act Aug. 5, 1909, c. 6, 36 Stat. 112, a corporation organized for profit and carrying on or doing business is liable to a tax equivalent to 1 per cent. on its entire net income over and above $5,000 received by it from all sources during such year.

2. INTERNAL REVENUE ⬡⬡9—CORPORATE TAXATION—LIABILITY.
   Plaintiff corporation, by a lease authorized by its stockholders and those of the lessee company, demised all of its property to the lessee corporation; the lease containing a covenant whereby the lessee agreed with plaintiff, for the benefit of its shareholders, to pay to such shareholders quarterly sums or dividends, the sums or dividends to be paid on dates stated each year during the terms of the lease to the persons registered as holders of such shares on the tenth day preceding each date for payment. Pursuant to a stipulation in the lease, the agreement under the seal of the lessee company was indorsed on the certificates of the capital stock of plaintiff company. *Held* that, while a corporation is a purely artificial person and its shareholders are the real parties interested, yet as the excise tax of 1 per cent. on the net income of corporations over and above $5,000 received from all sources imposed by corporation Tax Act, 1909, is a charge made for the exercise of the franchise of doing business in a corporate capacity, the rent payments must be deemed income of the plaintiff corporation subject to taxation, though paid directly to the shareholders; the lessee company merely relieving plaintiff of the duty of distribution.

In Error to the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Action by the Georgia Railway & Electric Company against A. O. Blalock, Collector of Internal Revenue for the District of Georgia. There was a judgment for plaintiff, and defendant brings error. Reversed.

Hooper Alexander, U. S. Atty., of Atlanta, Ga., for plaintiff in error.

Walter T. Colquitt and Ben J. Conyers, both of Atlanta, Ga., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. [1] The defendant in error, a corporation organized for profit, by carrying on or doing business in Georgia in the year 1912, subjected itself to liability to pay the tax provided for by the Corporation Tax Act of 1909, "equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year." Blalock v. Georgia Railway & Electric Co., 228 Fed. 296, 142 C. C. A. 588, Ann. Cas. 1917A, 679, Comp. Stat. 1913, § 6300 et seq.

[2] The pending writ of error presents for review rulings of the trial court to the effect that amounts paid during that year by the cor-

poration's lessee directly to the corporation's stockholders as rent stipulated for in a lease by the corporation of its property, which went into effect on March 18, 1912, was not income of the lessor corporation within the meaning of the statute mentioned, and was to be excluded from consideration in ascertaining the amount of the tax for which the corporation was liable. These rulings were based upon provisions of the lease now to be mentioned.

The lease, after providing for the payment by the lessee of sundry amounts, including taxes, the expenses of insuring and maintaining the leased property, outlays for additional property, interest on the lessor's debts, and debts and obligations other than the principal of specified bonds issued by the lessor, which but for the lease would have been payable by the lessor, contained provisions whereby the lessee covenanted with the lessor, "for the benefit of the shareholders for the time being of the lessor, that it will pay to the said shareholders, respectively, as and for rent hereunder, without any deduction for tax or taxes which the lessor or the lessee may be required to pay or to retain therefrom," etc., specified "quarterly sums or dividends" of a named per cent. of the lessor's capital stock, "the said sums or dividends to be paid on" dates stated "in each year during the term of this lease to the persons registered as holders of the said shares on the tenth day next preceding each day for such payment." The lease contained a stipulation by which the lessee bound itself to indorse upon the certificates of the capital stock of the lessor an agreement, under the seal of the lessee, signed by its duly authorized officer substantially in a form which was set out, which form, after reciting the making of the lease and its above-mentioned provisions for the payment of quarterly sums or dividends states that the lessee "agrees with the said registered holder of the within mentioned shares to pay the said dividends accordingly and to enter into a like agreement with every holder of the said shares to whom a new certificate shall be issued, and to indorse such agreement upon every such certificate." The lease was authorized by the stockholders of the lessor and lessee companies, and was duly executed pursuant to authority so conferred, and on March 18, 1912, all of the property and assets of all kinds of the lessor corporation called for by the lease were delivered to the lessee in accordance with the terms of the lease, and during the remainder of that year the lessee complied with the stipulations above mentioned.

A result of the lease was to make each stipulated installment of net rent payable to those who were stockholders of the lessor corporation when that installment was due, in proportion to their then respective holdings of stock, instead of to the lessor corporation itself. We do not think that what was done amounted to an assignment by the lessor to those who were its stockholders when the lease was made of proportionate shares of the net rent to accrue in the future. If there had been such an assignment, any assignee would have had the power of disposing of his share of the rent without disposing of his share as a stockholder in the rented property. It plainly appears that this was not contemplated. By the explicit terms of the lease the installments of rent were made payable "to the persons registered as hold-

ers of said shares on the tenth day next preceding each day for such payment." There was no assignment having the effect of a severance or separation of the beneficial ownership of the rent to accrue from the beneficial ownership of the rented property. The beneficial ownership of both continued in those who at any given time were the stockholders of the lessor corporation.

A business corporation in many respects is like a trading copartnership. Each is an association formed by its members for pecuniary gain. In the one case, as well as in the other, gains or income accruing from the conduct of the business, or from the property owned by the association, inure to the benefit of its members. The law, by permitting the association to be made a corporation, enables the associated members to secure for themselves the benefits of defined and limited responsibility, and at the same time the execution of the purposes for which they are associated by means of an artificial being, changes in the membership of which cause no break in the continuity of its existence and are without effect upon its capacity to act, within the scope of the powers conferred by its charter, as a natural person. The excise tax provided for by the above-quoted statute is a charge made for the exercise or enjoyment of the privilege or franchise of doing business in a corporate capacity. The real beneficiaries of that privilege or franchise are the stockholders, not the artificial legal entity, which is incapable of itself enjoying the pecuniary gain which is the object of its existence. Due recognition and effect may be given to the fact that a business corporation has a legal existence separate from that of its members or stockholders, without ignoring or denying effect to the obvious fact that its stockholders are the real beneficiaries of its existence and activities, and that such a corporation is but performing one of its normal functions when it makes provision for a ratable distribution among its stockholders of net gains accrued, whatever may be the form such a provision assumes.

The annual tax required to be paid by the corporation is "one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year." Is net rent paid for the use of corporate property made any the less corporate income received by the corporation, within the meaning of the provision just quoted, by the circumstance that, pursuant to a provision of the corporation's lease under which the rent is payable, it is paid to the corporation's then registered stockholders in amounts proportionate to their respective holdings of stock, instead of in a lump sum to the corporation itself? We think not. Rents accruing and paid for the use of partnership property are not made any the less partnership income by being made payable to the several partners in proportion to their respective shares or interests in the firm at the time the payment is made. There is no such difference between a partnership and a corporation as to require a different conclusion when the only difference is that the recipients of the payment are the stockholders of a corporation instead of the members of a partnership.

The difference between the way the rent under the lease here in question was paid and the way the same aggregate amounts would

have been paid, if the lease had made the installments payable to the corporation itself, is one of method and not of substance. Where the circumstances of a corporation are such that it can and does adopt the policy of distributing among its stockholders as promptly as practicable net income accruing from the corporate business or property, an arrangement whereby its debtor, who contributes the whole or a part of this income, makes the desired distribution of it among the corporation's stockholders amounts to no more than the corporation procuring its debtor to render a service for it; the net result being that the debtor, instead of remitting or paying what it owes direct to the creditor, makes the payment to others as directed by the creditor. A creditor as truly receives payment of what is due him when, pursuant to his direction, the debtor makes payment to another, as he does when payment is made directly to himself.

Nothing in the language of the statute indicates an intention to make the liability of the corporation to pay the prescribed tax dependent upon the presence or absence of such a distinction, without a substantial difference, as exists between the receipt by the corporation itself of net income accruing from its business or property and the receipt of the same income by the corporation's stockholders as such, for whose benefit alone the corporation would have been acting, if it had received the income. The terms of the statute are not such as to require that it be given a meaning that would invite and make easy evasions of its provisions. The fact that the making of the defendant in error's lease was unaccompanied by an intention to evade payment of the tax in question is not material. Though such intention did not exist, a compliance with the provision governing the manner of paying the net rent as it accrued was without effect upon the corporation's liability to pay the prescribed tax, measured by what was really net income over $5,000 received by it within the meaning of the statute.

The conclusion is that the above-mentioned rulings of the trial court were erroneous. Similar conclusions, based on states of fact not essentially different from that disclosed in the instant case, were reached in the cases of Rensselaer & S. R. Co. v. Irwin (D. C.) 239 Fed. 739, and Anderson v. Morris & E. Co., 216 Fed. 83, 132 C. C. A. 327.

The judgment under review is reversed.