### CUBA R. CO. v. EDWARDS, Collector of Internal Revenue.

(District Court, S. D. New York. June 11, 1921.)

1. **Internal revenue ⮌7—Government subsidies for construction and operation of railroad, payable after line constructed, held not taxable as income.**

Subsidies to railroad of specified sum per mile by Cuban government, as consideration for agreement to build and operate railroad, *held* contributions to capital, and not taxable as income, notwithstanding one line was to be completed before subsidies were to be paid, and government was given right of placing telegraph and telephone wires on right of way, and prescribe terms for carriage of mails, passengers, produce, and troops.

2. **Internal revenue ⮌36—Interest not allowed on tax erroneously paid because of commissioner's mistake in calculation.**

No interest may be allowed on tax erroneously paid because of commissioner's mistake in calculation after refund was accepted by taxpayer.

At Law. Action by the Cuba Railroad Company against William H. Edwards, as United States Collector of Internal Revenue for the Second District of New York. On demurrer to complaint. Demurrer overruled.

Lord, Day & Lord, of New York City (Howard Mansfield and Allen Evarts Foster, both of New York City, of counsel), for plaintiff.

⮌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Francis G. Caffey, U. S. Atty., of New York City (Richard S. Holmes, of New York City, and Ferdinand Tannenbaum, of Washington, D. C., of counsel), for defendant.

AUGUSTUS N. HAND, District Judge. The plaintiff seeks to recover income taxes paid under duress, and the defendant demurs to the complaint. The Cuba Railroad Company built one of its railroad lines under an agreement with the Cuban government authorized by an act of the Congress of that government that it would reduce by one-third its charges for government transportation, would transfer troops in case of war at a reduced rate, and would reduce passengers' fares over its lines, and that after the completion of the railroad the government would pay the plaintiff at the rate of $5,000 per kilometer in six annual installments. The railroad built another line under a contract with the Cuban government, whereby it was to receive $6,000 per kilometer, to be paid as the work progressed, in six annual installments, and was to transport mails free of charge, transport minor fruits at half rates, and permit the government to maintain telegraph and telephone lines on its right of way.

The lines of railroad were completed and annual payments were made to the plaintiff by the Cuban government, on which an income tax was claimed to be due for the years 1911 to 1916, inclusive. This tax was paid under protest, and amounted to $20,239.18. A further income tax of $13,685.14 was paid by the railroad, and afterwards returned by the United States government, because of a miscalculation of the rate, and accepted by the railroad. The plaintiff now seeks to recover back the sum of $20,239.18, with interest, and also interest between the date of payment and the date of return on $13,685.14.

[1] The question is whether the installments paid by the Cuban government were principal or income. Certainly they would not seem to be income in the ordinary sense. It is true that the first line of railroad had to be and was completed by the company before the subsidies were paid, and in the case of both lines there was something to be done on the part of the railroad in futuro by the terms of the contract. But can the subsidies be regarded in any proper sense as gains derived from capital or labor? Stratton's Independence, Ltd., v. Howbert, 231 U. S. 399, 34 Sup. Ct. 136; 58 L. Ed. 285.

The fixing of rates is certainly a common provision in government contracts granting railroad franchises, and the real consideration for the payment of the subsidy was the agreement to build the road and operate it. For that agreement a franchise to operate it on prescribed terms and a subsidy payable in six annual installments was granted. Suppose a subscriber for stock agreed to pay in his subscription in six annual installments after a railroad was completed. The subscriber's return would consist of a chance to receive dividends in the future. The government's return in this case was to be secured by the development of the island through the construction and operation of the railroad, the privilege on the part of the government of placing telegraph and telephone wires on the right of way, and of securing the carriage of mails and passengers, produce, and troops upon prescribed terms.

The fixing of rates is apparently a proper subject of governmental regulation. Would a subscription to stock be income because payable after the railroad was completed? I cannot see the merit of such a contention. The purpose seems clear to add to the funds of the railroad company, doubtless for the purpose of providing equipment or repaying obligations incurred in construction. Whatever the purpose of the subsidies, they in no way resemble earnings. They have but the remotest resemblance to a gain from either capital or labor.

The English cases, where annual contributions were made to assist in paying interest charges on construction bonds, are not in point. Such subsidies have been fairly held to be income, because they were intended to relieve the companies from annual charges against income. So far as annual subsidies were required to be used to form a sinking fund to amortize obligations incurred in construction, I think the English decisions are of doubtful correctness. They are defended in respect to the items to be applied toward a sinking fund upon the ground that the whole sum making up the annual subsidy was paid as income, and that the appropriation of a portion of it to a sinking fund after receipt by the company did not alter its original character. The court said in the case of Blake v. Imperial Brazilian Ry., Great Britain Reports of Income Tax Cases (1884) vol. 2, p. 58:

"When once the thing is ascertained as being subject to income tax, it matters not what is done with it afterwards. When once it has come within the grasp of the income tax acts, it is liable to income tax, whatever may be its destination, or whatever use it may be put to."

Whether the above reasoning be sound or not, no such situation confronts us here, for the payments are not derived from capital and labor, and are not to relieve annual interest charges against capital, but are contributions made within a short period to pay the railroad for constructing its lines and agreeing to run them on prescribed terms. I cannot see how the subsidies are income in any practical business sense.

[2] No interest can be allowed on the sum of $13,685.14, repaid by the Commissioner after discovering his mistake in calculating the tax, and accepted by the company. Stewart v. Barnes, 153 U. S. 456, 14 Sup. Ct. 849, 38 L. Ed. 781.

The demurrer is overruled.