B. D. VAN METER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

A. R. ENGLEMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30963, 30965.   Promulgated April 15, 1931.

*James C. Davis, Esq.,* for the petitioners.
*Warren F. Wattles, Esq.,* for the respondent.

OPINION.

LANSDON: These appeals, consolidated and submitted for decision upon a stipulation of facts and oral testimony, seek a review of the action of the respondent in holding that each of the petitioners is liable under section 280 of the Revenue Act of 1926 for unpaid

income taxes of the Van Meter Company, a dissolved corporation, hereinafter sometimes called the taxpayer. The taxable periods involved are the years 1922, 1923, 1924, and January 1 to August 31, inclusive, of 1925. The deficiencies for which liability is asserted are $3,171.44, $2,629, $2,465.22, and $1,349.07. The petitioners contend (1) that section 280, *supra*, is unconstitutional; (2) that the dissolved company was a personal service corporation; and (3) that the funds sought to be taxed, although earned under a contract in favor of the corporation were, in virtue of legal assignments, individual income to them and others when paid, and, therefore, not taxable to the corporation.

The first of these contentions is overruled. *Henry Cappellini et al.*, 14 B. T. A. 1269; *Phillips* v. *Commissioner*, 42 Fed. (2d) 177.

The income in question consisted of commissions on life insurance policies received by the Van Meter Company under the terms of two agency contracts with the Hawkeye Life Insurance Company, hereinafter sometimes called the Insurance Company. The parties have stipulated that prior to the incorporation the taxpayer or its promoters " took legal advice " and organized it with the purpose and intent of creating a personal service corporation. The record, however, fails to show that this was accomplished. It is true that each of the incorporators contributed some personal service to the conduct of agency business, but the record indicates that practically all the income in dispute came from commissions paid upon insurance written by employed agents. A trained force, more than ten in number, was brought in from Kansas by one McBride to do that work. These facts preclude personal service classification. *Commercial Liquidation Co.*, 16 B. T. A. 559; *Meinrath Brokerage Co.*, 12 B. T. A. 113.

Petitioner's last contention is that by effective assignments the Van Meter Company completely divested itself of all interest in commissions earned under its agency contracts with the Hawkeye Life Insurance Company.

Both contracts provided that the agent might collect all first year premiums and retain therefrom certain specified percentages as commissions; that in respect to premiums thereafter paid upon such business there would " be allowed " the agent, " or its assigns," certain other renewal commissions of varying and graduated percentages and for settlements to be made and paid in cash monthly. The contracts also gave the Insurance Company certain regulatory authority over the agent and its employees; provided for the maintenance of an office for the agent, adjacent to the home office of the Insurance Company; and for a division of expenses, including payment by the agent of the salary of a secretary for the Insurance Com-

pany so long as charter membership policies were being written; required the agent to make periodical accountings to the principal, and made any indebtedness shown in favor of the Insurance Company a lien upon any commission due, or to become due to the agent.

The first of these contracts was executed June 15, 1920, but prior thereto the stockholders of the taxpayer attempted to dispose of the income that might accrue to it from their service by the execution of the first of a series of assignments which they claim wholly divested it for all times of any title in and to the commissions when earned. The first of these instruments was executed June 8, 1920, at Topeka, Kans. It assigned one-fourth of one per cent of all charter membership first year premiums and one-fourth of one per cent on all renewal charter membership premiums on policies of the Hawkeye Life Insurance Company, written by the taxpayer, to Louise S. Wigton, who was not a stockholder of either corporation. Thereafter, an agreement was entered into between the five stockholders of the Van Meter Company, which provided that 7½ per cent of a specified class of commissions should be set aside and divided equally among three of them, Moore, McBride, and Bays, and that after next paying all expenses of the company, the balance, if any, should be divided equally among the five stockholders. To facilitate direct payments this contract also provided that the Van Meter Company should execute assignments to each of the individuals, " share and share alike," covering the division of commissions, as provided for, and that the filing of the contract with the Hawkeye Life Insurance Company by any signor should constitute authority to that company to make disbursements, as provided, out of any money due the taxpayer. This contract was " accepted " by the Van Meter Company, August 9, 1920. On October 31, 1921, the Van Meter Company, by resolution of its stockholders, made a new and different apportionment among its stockholders, of the renewal commissions involved. This resolution, after first allowing for the portion assigned to Louise S. Wigton on June 8, 1920, declared an equal division between the five stockholders of the commissions to be thus earned. Other agreements of similar form and import, but ignoring all prior divisions, were made between these stockholders, providing for other and different apportionments of interest in the commissions to be earned. All such assignments were " accepted " by the Insurance Company and the amounts provided for paid to the parties therein named as assignees.

On April 1, 1923, these petitioners had become the sole owners of the Van Meter Company, and at that date that corporation had

passed a resolution which, after referring in specific terms to the general agency contract of June 15, 1920, provided as follows:

The Van Meter Company by unanimous vote of its stockholders hereby assigns the renewal commissions on all business written by the Hawkeye Life Insurance Company under the terms of this contract, as follows:

The renewal commissions earned and due the Soliciting Agent, as advised monthly by the Van Meter Company, to be paid direct to them.

The balance of said renewal commissions is to be paid as follows:

One-half (½) to B. D. Van Meter, Des Moines, Iowa.

One-half (½) to A. R. Ingleman, Des Moines, Iowa.

On January 22, next following, the Van Meter Company having, on the day prior, renewed its general agency contract with the Hawkeye Life Insurance Company at a meeting of its stockholders, adopted a resolution which made effective this last mentioned assignment in all its terms to the new agency contract.

The petitioners urge several reasons why the payments involved should not be regarded as income to the taxpayer, but the single question which must control our decision is one of law as applied to the facts shown. If the involved processes employed by the stockholders of the Van Meter Company were sufficient to effect a legal severance of the beneficial ownership of the future commissions from the burdens incident to ownership of the agency contract, then the Van Meter Company had no property interest in them and the petitioners must prevail.

The basic contract in this case was one of agency carrying with it reciprocal obligations and benefits to both principal and agent. Under its terms an elaborate scheme was set up to govern the co-operative efforts of the parties in obtaining business for the Insurance Company. The scheme, among other things, made it the agent's duty to maintain, at its own expense, an office adjacent to the home office of the Insurance Company and to pay the salary of the Insurance Company's secretary during such time as charter membership policies were being written. The agent was also required to give a good and sufficient surety bond to guarantee " the faithful accounting of all monies, policies, receipts and supplies " that might come into its hands, and, in the monthly settlements, any indebtedness of the agent to the principal was made a lien upon any commissions due or to become due the former. Whether or not, in the absence of the conditions noted, these obligations to pay could be split off from the contract which earned them, and transferred as ordinary accounts receivable, or choses in action, it seems clear, in view of the lien thus retained, that no such separation was intended or effected. It seems equally clear that the stockholders, at no one of the several times when these alleged assignments were made, considered that

the effect of any one of their acts deprived the taxpayer of ownership of either the present or future earnings under the contract. That they at all times considered title to these commissions as resting in the Company is indicated by the fact that each successive assignment proceeded direct from the taxpayer and attempted to apportion anew the income, earned or to be earned, without reference to any prior assignment, or releases therefrom by the alleged distributees. Keeping in mind the contract, under which no payments were due the agent until all financial obligations were discharged, these acts indicate an intent to distribute the net income from the contract after it had become due and payable to the corporation. It was no more than a convenient device for the automatic distribution of profits, without the corporate formalities of declaring dividends, which could in no way relieve the corporation from tax liability on earnings. *Blalock* v. *Georgia Ry. & Electric Co.*, 246 Fed. 387; *Rensselaer & S. R. R. Co.* v. *Irwin, Collector of Internal Revenue*, 249 Fed. 726. In line with this view we find an expression from an English tax court quoted, with approval, by the United States Circuit Court in *Cuba Ry. Co.* v. *Edwards*, 298 Fed. 664, in which it is said:

When once the thing is ascertained as subject to income tax, it matters not what is done with it afterwards. When once it has come within the grasp of the income tax acts, it is liable to income tax, whatever may be its destination, or whatever use it may be put to. *Blake* v. *Imperial Brazilian Ry*. 2 Income Tax Cases, 58.

Consistent with this view have been the holdings of this Board and the courts. *Irene McFadden Winder*, 17 B. T. A. 303; *Edward J. Luce*, 18 B. T. A. 923; *Samuel J. Lidov*, 16 B. T. A. 1421; *Ella Daly King, Executrix*, 10 B. T. A. 698; *Lucas* v. *Earl*, 281 U. S. 111; *Cohan* v. *Commissioner*, 39 Fed. (2d) 540; *Bing* v. *Bowers*, 26 Fed. (2d) 1017. The action of the respondent in holding the Van Meter Company liable for payment of corporation income tax upon the commissions involved and the petitioners for payment of said tax as distributees of said corporation is sustained.

It is stipulated that the petitioner, Van Meter (Docket No. 30963), received of the proceeds from the earnings of the Van Meter Company agency contract, herein considered, amounts for the years indicated as follows: 1922, $5,471.60; 1923, $4,962.25; 1924, $4,489.13; 1925, $4,727.40; 1926, $4,619.34; 1927, $4,276.76; 1928, $4,017.04; and 1929, $3,771.09; and that petitioner, Ingleman (Docket No. 30965), received from the same source for these years the respective amounts: $4.69, $2,112.37, $1,844.27, $2,119.21, $2,288.52, $1,937.25, $1,769.18, and $1,702.05. In view of the fact that the aggregate amount respectively received by these petitioners in each case exceeds the original liabilities asserted against them, it follows that

the request made by respondent in his amended answer that we now increase the liabilities as to each petitioner to correspond to his full liability as measured by the amounts so received, must be granted. *Grand Rapids National Bank*, 15 B .T. A. 1166; *Annie G. Phillips et al., Executors*, 15 B. T. A. 1218; affirmed in 42 Fed. (2d) 177; *J. W. Oglesby, Jr.*, 16 B. T. A. 1191; *Atlas Plywood Co.*, 17 B. T. A. 156; and *Sawyer Milling Co.*, 17 B. T. A. 160.

Reviewed by the Board.

*Decision will entered under Rule 50.*