MRS. H. C. WALKER, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

H. C. WALKER, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. ELIAS GOLDSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELIAS GOLDSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33331, 33332, 36117, 36118.   Promulgated May 1, 1931.

*Elias Goldstein, Esq.*, for the petitioners.

*J. Arthur Adams, Esq.*, and *Frank A. Surine, Esq.*, for the respondent.

## OPINION.

SMITH: The petitioners make the contention that the income in dispute was taxable to them in 1921 and 1922 when under the terms of the agreement of June 23, 1920, the oil produced from their royalty interest was sold and the proceeds from such sales were deposited in the City Savings Bank & Trust Company to their credit. The respondent contends that there was a completed sale by the petitioners of their royalty interest in the lease at the time of the execution of the agreement and that since the petitioners elected to report their income from the sale on the installment basis, that is, $50,000 in each of the years 1921, 1922, 1923, and 1924, they should

not now be permitted to change and report on a different basis when so doing would result in throwing a large part of the income back in a prior year for which assessment and collection would be barred by the statute of limitations.

The petitioners in support of their contentions rely principally upon the decisions in *Looney* v. *United States*, 26 Fed. (2d) 481; affirmed by the Circuit Court in *United States* v. *Looney*, 29 Fed. (2d) 884. The lower court there held, contrary to the Commissioner's determination, that the $200,000 paid to the bank, as depositary, under the provisions of the above agreement of June 23, 1920, and finally distributed to the petitioners herein, was never received by and did not constitute income taxable in any year to Looney and his associates. The Circuit Court, in affirming the lower court, said:

> * * * An effect of that agreement was a settlement and compromise of that dispute by the parties on one side of it relinquishing in favor of the other parties the claim of the former to the oil royalty mentioned, except a stated interest in that royalty, and by the firm of which one of the appellees was a member relinquishing in favor of the other parties to the agreement the claim of the firm to that royalty accruing from June 1, 1920, until the sum of $200,000 should be realized therefrom. For a valuable consideration moving to the firm mentioned, [Foster, Looney & Wilkinson] namely, the relinquishment of an adverse claim to the oil royalty, that firm parted with all right or interest in or to the royalty accruing from June 1, 1920, until it amounted to the sum of $200,000. Though before the compromise agreement was made the firm mentioned owned the royalty which was the subject of that agreement, upon the execution of that agreement the other parties to it became the owners of the part of that royalty which, under the terms of the agreement, was to be paid to them. In other words, prior to 1921, the firm mentioned ceased to own all of that royalty which accrued during that year. It follows that neither of the appellees was entitled to a share of that royalty accruing in 1921. Rents or royalties are included in the income of their owner, though they are not actually received by him, but pursuant to his direction are paid to another. *Houston Belt & Terminal Ry. Co.* v. *United States* (C. C. A.) 250 F. 1; *Blalock* v. *Georgia Ry. & Electric Co.* (C. C. A.) 246 F. 387. But rents or royalties are not properly included in the income of one who did not own, receive, or control them; the ownership thereof being vested in another when they accrued. We conclude that the above-mentioned ruling was not erroneous. The judgment is affirmed.

In *Katherine Wilkinson Barnette*, 16 B. T. A. 1390, we held upon authority of the decision of the Circuit Court that the other members of the partnership of Foster, Looney & Wilkinson were not taxable upon any portion of the $200,000. The Board had previously held in *H. C. Walker, Jr., et al.*, 6 B. T. A. 1142, referred to above, that the identical petitioners herein were not entitled to any deduction for depletion allowances in respect of their interests in the lease in 1921 and 1922, since by the terms of the agreement they had sold and transferred all such interests in a prior year.

We are convinced, however, that the construction placed upon the agreement of June 23, 1920, by the Circuit Court in *United States* v.

*Looney, supra,* is contrary to our holding in *H. C. Walker, Jr., et al., supra,* that by such agreement there was a completed sale by the petitioners of their interest in the lease to Foster, Looney & Wilkinson. Under the construction given the agreement by the court the petitioners were recognized as owners of the disputed royalty interest " until the sum of $200,000 should be realized therefrom." At that time the ownership of the interest was to vest in Foster, Looney & Wilkinson. This amount of $200,000 had been realized from the royalty interest and deposited with the bank under the terms of the agreement at January 6, 1922. The petitioners thereafter did not own any interest in the lease. It follows that the petitioners are not entitled to a depletion allowance in respect thereof in the years 1923 and 1924.

Counsel for the petitioners stated at the hearing had in these proceedings that the petitioners did not delay in making their contention that all of the $200,000 realized from their royalty interest was income in 1921 and 1922 until after the statute had barred the assessment and collection for the prior years with any intention of avoiding the tax, but that the contention was made " after the Circuit Court of Appeals, and subsequently the Board of Tax Appeals, in the other cases had decided that the construction was wrong." The court, however, did not have these petitioners before it in the cases referred to and there has been no determination by the court of the petitioners' tax liability in respect of these amounts for any of the years under consideration. We have before us in these proceedings different petitioners and a different set of facts. The ruling of the court that the right to receive the royalties in question when accrued was the property not of Foster, Looney & Wilkinson, but of the petitioners, Walker and Goldstein, is not determinative of the year in which the petitioners should report the amounts as their taxable income, regardless of the methods used by them in keeping their accounts and reporting their income. The facts are that the petitioners reported in each of the years 1921, 1922, 1923, and 1924 their proportionate parts of the $50,000 actually received by them in those years; that is to say, they reported all of the proceeds to which they were entitled in those years and which were subject to their use and enjoyment. In *Otto Braunwarth,* 22 B. T. A. 1008, we held that where, upon the sale of a business, title passed to the vendee and part of the purchase price was paid in cash and the remainder in Liberty bonds, which were placed in escrow to be delivered to vendor in installments over a period of years upon the filing by him each year of an affidavit that he had not competed in business, although the transaction was closed in the year of sale, the right to the deferred payments was not the equivalent of cash and the installment payments were not income to the petitioner, the vendor, until received.

6

The petitioners reported the income in question upon the installment basis. The Commissioner's regulations, article 42, Regulations 45, 62, and 65, provided for reporting income in this manner and the Commissioner accepted the returns filed by the petitioners as a basis for computing their tax liabilities. Presumably the petitioners thus acquired a benefit by distributing their income over a period of several years and avoiding the high taxes that would have resulted from reporting a larger amount in any single year. The petitioners now seek to report their income upon another basis which would throw the greater part of it back into a year which is barred by the statute of limitations. In *Commissioner of Internal Revenue* v. *Moore*, 48 Fed. (2d) 526, the Circuit Court of Appeals, Tenth Circuit, confronted with a similar situation, said:

The sole question involved on these appeals is whether the profit derived from the sale of certain oil stock should be charged into the income of the taxpayers for the year 1918, when the contract of sale was made, or whether it should be charged into the years in which the payments on the purchase price were actually received. The Board of Tax Appeals held that the entire profit was taxable in the year 1918, and since the statute of limitations had run on the assessment of taxes for that year, that there was no taxable liability. * * *

* * * * * * * *

The taxpayers were on a cash basis of accounting, and in line with the statute above quoted, they did return the profits from this sale "in the gross income for the taxable year in which received by the taxpayer," proportioning the profit in accordance with the quoted Regulation. Conceding, for the argument, that the statute and regulation afforded the taxpayers the election of treating the obligations of the purchaser as the equivalent of cash, the taxpayers otherwise elected; they may not now change that election, particularly since the result would be to throw all of the profit into a year where collection is barred by limitations. *Lucas* v. *St. Louis National Baseball Club* (C. C. A. 8) 42 F. (2d) 984; *Rose* v. *Grant* (C. C. A. 5) 39 F. (2d) 340; *Alameda Investment Co.* v. *McLaughlin* (C. C. A. 9) 33 F. (2d) 120; Holmes on Federal Income Tax (6th Ed.) 1278.

Another point is worthy of notice. Section 212 (d) of the Revenue Act of 1926 (26 USC 953) is made retroactive by Section 1208 of the same Act (26 USC 953–a). That section, and the regulation promulgated thereunder (Reg. 69, Art. 42) permits the distribution of profits on a sale on deferred payments in the case of "casual sale * * * for a price exceeding $1,000 * * * if the initial payments do not exceed one-fourth of the purchase price." The section defines "initial payments" as cash or property other than evidences of indebtedness of the purchaser. The case at bar falls within the four corners of this retroactive statute.

We think that the petitioners properly reported in the taxable years 1923 and 1924 the amounts of cash actually received by them in those years under the terms of the agreement of June 23, 1920, and that they have no reasonable grounds for asking a redetermination of their tax liability for those years.

*Judgments will be entered under Rule 50.*