*1168 OPINION.
Hill:
The question presented involves the determination of the amount of income, if any, received or accrued to petitioner during the taxable year under the terms of the leasehold agreement.
*1169 Petitioner in its income tax return reported income in tlie total amomit of $141,079.58, comprised of $124,026 representing the amount of dividends paid for it by the Alton Co. plus Federal income tax thereon in the amount of $17,058.58 paid for it by such company. The deficiency determined herein results from the action of respondent in increasing petitioner’s income to the amount of $379,954.58, comprising $334,026 determined by respondent as representing the amount of dividends on petitioner’s stock paid or payable for it by the Alton Co. in the taxable year plus $45,928.58 representing, as determined by respondent, the amount of income tax on such last amount paid or payable by the Alton Co. for petitioner.
Aside from the question of whether the amount of Federal income tax on the net earnings of petitioner’s railroad, paid or payable by the lessee out of the gross earnings of such railroad, is chargeable as rental under the lease, the maximum amount of the rental to petitioner provided by the leasehold agreement is the total of a 7 percent dividend on $3,000,000 par value of preferred stock and $271,800 par value of common stock, and a 6 percent dividend on $1,750,000 par value of preferred stock. Such maximum rental is payable only in the event the gross earnings of the railroad for the year preceding the taxable year, less a deduction of 65 percent thereof for operating expenses, renewals and repairs and less a further deduction of all taxes and assessments of every description, are sufficient to pay the full amount of such dividends. We have found that the total amount of such dividends in the taxable year was $334,026 and the amount of the gross earnings of the railroad for the year preceding, less the stated deductions, was approximately $729,000.
A somewhat parallel situation was presented in the case of Gold & Stock Telegraph Co., 26 B. T. A. 914; affd., 83 Fed. (2d) 465. In holding in favor of the Commissioner, the Board there said:
* * * But they argue that they are under no obligation to their stockholders and therefore do not own or derive any benefit from the payments to the stockholders. The use to which money is put does not determine whether or not it was income before being so used. Nor need it determine who owned the income. Rent is income of the lessor who is entitled to say what shall be done with it. Why should it make any difference what the lessee agreed to pay on behalf of the lessor, whether a debt or a dividend? In either case it has applied the rent in accordance with the wishes of the lessor. If constructive receipt applies in the one case it may just as well apply in the other. Cf. Blalock v. Georgia Ry. & Elec. Co., 246 Fed. 387. * * *
On appeal tbe decision of the Board was affirmed; the Circuit Court, per bland, C. J., adding:
It is argued that the rentals payable upon the large stockholdings of the Western Union [lessee] itself should not be taxed as income of the lessor because the rentals to that extent were not paid out, but we can see no merit in the contention. The Western Union, like every other stockholder of the *1170 lessor, chose to acquire an interest in the corporate association. Rent accrued to it as a stockholder of the corporation and, whether it chose to pay to itself or not, its rights were as truly worked out through the corporation as those of the other stockholders. The property of the corporation of which it was a beneficiary yielded a return, and that corporation cannot avoid taxes because the guaranty could not be enforced by the Western Union against itself. * * *
Petitioner has pointed to the later case of Louisville, Henderson & St. Louis Ry. Co., 20 Fed. Supp. 483 (1937), in an effort to distinguish the instant case from the Gold & Stock Telegraph case. In the Louisville case, the court, in finding for the taxpayer, pointed out that the lessee in the Gold & Stock Telegraph case was required to pay a lump sum in rent. The fact in the latter case was that the Western Union Co. agreed to pay annual rental of $300,000, payable quarterly, being a sum equal to 6 percent per annum on the lessor’s stock.
In the instant case, although the amended instrument does not name any lump sum, it does name the method by which a sum certain can be obtained as the result of a simple arithmetical calculation. This difference between the two cases is immaterial. However, to return to the Louisville, Henderson & St. Louis case, supra, the real distinction between that case and the instant case is pointed out by the court in its opinion:
In the cited case, [Gold & Stock] the lessee was required to pay a lump sum in rent. It was not measured by the number of shares of stock of the lessor outstanding, excluding that owned by the lessee, nor did the contract fixing rent exclude in measurement the stock of the lessor owned by the lessee.
It is easy to see that the same distinction could be applied to the present case. Consequently, in following the Gold & Stock Telegraph case, we do not misinterpret the doctrine of the Louisville case.
Petitioner insists, however, that Treasury Regulations 77, article 70,[1] has no bearing on the present controversy, inasmuch as that article deals only with leases, and petitioner asserts that under the laws of the State of Missouri, the instrument in controversy here is the acknowledgment of a transfer in fee. Regardless of which is the correct view of the indenture, and this Board makes no deter *1171 mination thereof, the conclusions to be arrived at in either case must be the same. If there is a ground upon which to sustain the Commissioner’s determination other than that evoked by Commissioner, this Board feels compelled to take notice of that ground and render decision accordingly. If, as petitioner asks, the instrument be treated as an absolute conveyance, the petitioner nevertheless is in a sense, by reason thereof, being relieved of an annual obligation. It is true that this obligation, except in regard to the guaranteed preferred stock, was conditioned on the sufficiency of petitioner’s net income. It is also obvious, however, that, since there could never be income other than that provided under the instrument, the “rent” provision was intended to be looked upon as a satisfactory annual income for the corporation, and on such understanding the stockholders ratified the plan. This was the wish of the petitioner. A taxpayer can not retain its corporate form of association and the benefits to be derived therefrom without being subject to the taxes which are naturally involved.[2]
There remains the question of liability for income taxes guaranteed to be paid by the Alton Co. because of dividends on the stock. On this question we have found as a mixed conclusion of fact and law that the indenture, even as amended, requires the Alton Co. to pay taxes on account of the dividends on the 6 percent guaranteed preferred stock only; and in effect such taxes in the amount of $14,437.50 actually were paid therefor by the Alton Co. Consequently, petitioner realized income in this amount but not in the amounts of any other income taxes claimed by respondent to have been assumed by the Alton Co., except for any amounts actually paid by the Alton Co. because thereof, which were in the amount of $2,616.08.
There is also the question as to whether the Alton Co. owed all petitioner’s stockholders the amounts set forth as maximum rental or only that amount required as the minimum in any one year. The indenture is sufficiently clear on this point, and, if the gross income of the premises (computed according to the formula set forth in the indenture), is sufficient to pay the maximum rent, then the maximum is due. Inasmuch as we have found as a matter of fact that the application of this formula to the gross income derived by the Alton Co. from the premises in 1932 was sufficient to cover the maximum *1172 rent, it must of necessity follow that the Alton Co. was obliged in the taxable year 1933 to pay that maximum.
That part of such maximum rental not paid by the Alton Co. in the taxable year represented the amount of dividends payable to it on stock of petitioner which the Alton Co. held. Funds being available in the hands of the Alton Co. under the terms of the lease contract for the payment of such maximum rental, the obligation of petitioner in respect of such dividends was discharged, notwithstanding that the Alton Co. neither credited petitioner nor charged itself with such payment. Consequently petitioner is taxable on an amount as income equal to such stated amount of maximum rental.
Finally petitioner makes the contention that the Alton Co. did not assume the obligations of its predecessor under the indenture. The ground for this contention is that the Alton Co. never ratified the contract in writing, and still has the power under the court decree to disaffirm contracts entered into by its predecessor. As respondent points out, however, this is a power to disaffirm, not to affirm, and consequently the mere fact that the Alton Co. enjoyed the benefits of the indenture in the year 1933 is sufficient ground to estop it from denying the obligations set forth therein. Cf. Dunlop v. James, 67 N. E. 60 (1903); Broadwell v. Banks, 134 Fed. 470 (1905).

Decision will be entered v/nder Rule SO.

 Ain?. 70. Income to lessor corporation from leased, property. — Where a corporation has leased its property in consideration that the lessee shall pay in lieu of other rental an amount equivalent to a certain rate of dividend on the lessor’s capital stock or the interest on the lessor’s outstanding, indebtedness, together with taxes, insurance, or other fixed charges, such payments shall be considered rental payments and shall be returned by the lessor corporation as income, notwithstanding the fact that the dividends and interest are paid by the lessee directly to the shareholders and bondholders of the lessor. The fact that a corporation has conveyed or let its property and has parted with its management and control, or has ceased to engage in the business for which it was originally organized, will not relieve it from liability to the tax. While the payments made by the lessee directly to the bondholders or shareholders of the lessor are rentals as to both the lessee and lessor (rentals paid in one case and rentals received in the other), to the bondholders and the shareholders such amounts are interest and dividend payments received as from the lessor and as such shall be accounted 'for in their returns.

 Revenue Act of 1932—
SBC. 22. GROSS INCOME.
(a) General Definition. — “Gross income” includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *